### WEIR et al. v. BARKER.

(Supreme Court, Appellate Division, Second Department. April 28, 1905.)

1. TRUSTS—LEASE—POWER OF TRUSTEE—STATUTE—CONSTRUCTION.

In view of the history of the legislation and other statutes in pari materia at the time of the enactment of Real Property Law (Laws 1896, p. 573, c. 547) § 86, providing, in the first sentence, that a trustee of property during the life of the beneficiary may execute a lease of real property for a term not exceeding five years, without application to the court, as found in Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2, § 65, from which section 86 was taken; Laws 1896, p. 571, c. 547, § 76, subd. 3; Laws 1895, p. 715, c. 886, amending Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2; Laws 1882, p. 342, c. 275, which was further amended by Laws 1884, p. 32, c. 26; Laws 1886, p. 436, c. 257; and Laws 1897, p. 49, c. 136; and the last sentence of section 86 itself, providing that if any such trustee has leased trust property before June 4, 1895, for a longer term than five years, the Supreme Court, on the application of the trustee, may by order confirm the lease by an order binding on all persons interested in the trust estate; and in view of the status of the decisions of the courts—the legislative intent in the use of the first sentence of section 86 was to extend, rather than restrict, the powers of the trustee, and hence a five-year lease, executed in 1900 by a trustee of a life beneficiary, containing an option for renewal for five years, is enforceable against the trustee, subject only to the contingency of being terminated by the beneficiary's death during the term of the lease.

2. SAME—SPECIFIC PERFORMANCE—WASTE—EQUITY JURISDICTION.

Where a lease executed by a trustee contained a renewal option agreement under which the rental was stipulated at a certain sum and one-half the excess over such sum for which appraisers therein appointed should determine the premises could be rented to a responsible party for the period, the fact that the appraisers determined the fair rental value to be in excess of the stipulated rent, so that the beneficiaries stood to receive less under the option agreement than the fair rental value as found by the appraisers, was not a matter of which a court of equity would take cognizance in a suit by the lessees to compel the specific performance of the renewal option on the ground that a court of equity will not compel a trustee to commit waste.

3. LEASE—RENTALS—DETERMINATION MADE IMPOSSIBLE UNDER CONTRACT—EFFECT.

Where the rental to be paid on the exercise by lessees of an option in the lease was to be determined by appraisers nominated by the parties at the time of execution of the option agreement, and the death of an appraiser occurred before the exercise of the option, equity has jurisdiction to make the determination.

Controversy between John R. Weir and another and Frances E. Barker, trustee under will of Charles Barker, deceased, submitted on agreed statement of facts pursuant to the provisions of the Code of Civil Procedure. Decree rendered conditionally.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, RICH, and MILLER, JJ.

William J. Carr, for plaintiffs.

Hugo Hirsh, for defendant.

MILLER, J. This is a submitted controversy in which the plaintiffs seek to compel the specific performance of an option agreement for a renewal for five years contained in a lease for a like period executed between the parties February 14, 1900, the defendant claiming that the lease for five years with the renewal option to the lessees was, in effect, a lease for more than five years, and was therefore void as to the renewal provision as being in violation of section 86 of the real property law (Laws 1896, p. 573, c. 547), which is as follows:

"When Trustee may Lease Trust Property.—A trustee appointed to hold real property during the life of a beneficiary, and to pay or apply the rents, income and profits thereof to, or for, the use of such beneficiary, may execute and deliver a lease of such real property for a term not exceeding five years, without application to the court. The Supreme Court may, by order, on such terms and conditions as seem just and proper, in respect to rental and renewals, authorize such a trustee to lease such real property for a term exceeding five years, if it appears to the satisfaction of the court that it is for the best interest of the trust estate, and may authorize such trustee to covenant in the lease to pay at the end of the term, or renewed term, to the lessee the then fair and reasonable value of any building which may have been erected on the premises during such term. If any such trustee has leased any such trust property before June fourth, eighteen hundred and ninety-five, for a longer term than five years, the Supreme Court, on the application of such trustee, may, by order, confirm such lease, and such order, on the entry thereof, shall be binding on all persons interested in the trust estate."

It is contended by the plaintiffs that said section is an enabling act, while the contention of the defendant is that its purpose was to restrict the existing powers of trustees in respect to leases of trust property. In construing this statute we are not aided by judicial utterances, except so far as general rules of construction have been established. The particular clause requiring construction in this case is: "A trustee * * * may execute and deliver a lease of such real property for a term not exceeding five years, without application to the court." While the language quoted is permissive only, and a strict and literal construction would not import to it a purpose to restrict existing powers, it would seem at first blush, and when read without reference to other parts of the statute in pari materia, and without regard to the history of the legislation, to have been intended by the Legislature to provide a rule which should govern the act of a trustee in leasing trust property, and that it should be construed as though it read, "A trustee * * * shall not execute and deliver a lease of such real property for a term exceeding five years, without application to the court;" but as this requires us to transpose words, and to give

to the word "may" an unusual and secondary, rather than its primary and common, meaning, we should not adopt this construction without ascertaining the purpose of the Legislature, not alone from the language employed, but as well from the theretofore existing law, the history of the legislation, and the other sections of the statute in pari materia. Section 86 of the real property law (Laws 1896, p. 573, c. 547) was taken from section 65 of the Revised Statutes (1st Ed.) pt. 2, c. 1, tit. 2, relating to uses and trusts. The provisions of the Revised Statutes as amended from time to time, and as finally revised and consolidated in the real property law, did not create uses and trusts, but abolished certain uses and trusts, preserving others as regulated and modified. The statute related particularly to the creation and validity of such estates, and did not assume to provide exclusive rules governing the conduct of the trustee in the administration of the trust estate, but left that matter to be controlled by the rules of the common law applicable thereto, except so far as the statute expressly or by necessary implication dealt with the subject. The trust referred to by section 86 of the real property law is the trust authorized by subdivision 3 of section 76 of said law (Laws 1896, p. 571, c. 547), formerly section 55, pt. 2, c. 1, tit. 2, of the Revised Statutes (1st Ed.) to wit, a trust "to receive the rents and profits of real property, and apply them to the use of any person, during the life of that person." Such a trust necessarily implies a power to lease (Leggett v. Perkins, 2 N. Y. 297), and, as the statute prior to 1895 contained no restriction upon the power to lease, a trustee having a legal estate could undoubtedly lease for the entire term of such estate; and, although there are expressions of the court in Greason v. Keteltas, 17 N. Y. 491, to the effect that such a lease might be valid for a period extending beyond the termination of the trust estate, it was undoubtedly the settled law of this state at the time of the original passage of the act in question in 1895 that such lease was not binding on remaindermen, but was valid only for a period ending with the trust term (Corse v. Corse, 144 N. Y. 569, 39 N. E. 630; Gomez v. Gomez, 147 N. Y. 195, 200, 41 N. E. 420; Matter of McCaffrey, 50 Hun, 371, 3 N. Y. Supp. 96; Matter of City of New York, 81 App. Div. 27, 81 N. Y. Supp. 32); so that at the time of the enactment of the statute in question the trustee had power to make a valid lease, limited only as to duration by the duration of the trust, subject, of course, to the control which courts of equity exercised over trustees. The act which we are construing, when first enacted, was chapter 886, p. 715, of the Laws of 1895, being an amendment of section 65, pt. 2, c. 1, tit. 2, Rev. St. (1st Ed.). Said section 65 originally read as follows:

"Where the trust is or shall be expressed in the instrument creating the estate, every sale, conveyance, or other act of the trustees, in contravention of the trust, shall be absolutely void."

This section was first amended by chapter 275, p. 342, of the Laws of 1882, by inserting a proviso empowering the Supreme Court to authorize a trustee to mortgage such real estate for cer-

tain purposes upon giving notice of the application to the beneficiary or beneficiaries of the trust. This section was further amended by chapter 26, p. 32, of the Laws of 1884, by correcting an evident mistake in the number of the section amended, and by chapter 257, p. 436, of the Laws of 1886, by inserting a provision for sale as well as mortgage of such real estate. Up to this point it is evident that the purpose of each amendment was to relax the stringency of the original section, and to enable certain things to be done which were clearly prohibited by it in its original form. The language employed in respect to leasing, when first incorporated in said section 65 by chapter 886, p. 715, of the Laws of 1895, clearly indicates the intent of the Legislature to relax still further the rule by embodying an additional enabling act in respect to leasing. By reference to said chapter 886, p. 715, of the Laws of 1895, it will be found that, in language very similar to that used in respect to empowering the Supreme Court to authorize a trustee to mortgage or sell, a provision was incorporated providing that the Supreme Court should be empowered to authorize a lease for such term as to the court should seem just and proper, the only distinction being that the provision in respect to mortgage and sale was made applicable to any trust expressed in the instrument creating the estate, while the provision in respect to leasing applied only to a trust to hold real estate during the life of a beneficiary, and to pay or apply the rents, income, and profits thereof to or for the use of such beneficiary. It will be noticed that the clause, "A trustee  *  *  *  may execute and deliver a lease of such real property for a term not exceeding five years, without application to the court," as now contained in the statute, is not found in the act of 1895, but instead thereof, at the close of the section, was this provision: "Notwithstanding the provisions herein contained, a trustee appointed for the purposes aforesaid, shall have authority, without making such application as aforesaid, to execute and deliver a lease of such real estate for a term of five years or less." This was merely a saving clause, and it can hardly be contended that a saving clause could have the effect of limiting a power already existing. It is clear, therefore, both from the history of the legislation and from the language used in this statute as originally enacted, that the purpose of the Legislature was to extend, rather than restrict, the powers of the trustee. Such was clearly the purpose in respect to sale and mortgage, and by analogy was, therefore, in respect to leasing. This purpose is made still more clear by reference to the last sentence of the section, which provided for an application to the court for confirmation of a lease made before the passage of the act for a longer term than five years. The purpose of such confirmation is clearly the same as the authorization by the court in the first instance of a leasing for more than five years. The Legislature may be presumed to have known the existing law upon the subject as declared by the courts of this state. It knew, therefore, that such a lease was valid as between the parties at least until the termination of the trust. It is unnecessary now to determine whether the

purpose of the statute in providing for the authorization of a lease for more than five years by the court and for the confirmation of such a lease if one had theretofore been made was to preclude the beneficiary from raising any question as to the improvidence of the trustee in making it, or whether its purpose was to make such a lease binding upon the remaindermen in case of the death of the beneficiary before the termination of the lease, as it is equally unnecessary to determine whether such purpose could have been effectuated as a valid exercise of legislative power, because, whatever view is taken, it is clear that the purpose of the statute was not to restrict any power which the trustee then had. The fact that the provision in respect to leasing only applies to a trust to endure for a life lends support to the assumption that the purpose of the statute was to enable a lease to be made valid for a term extending beyond the trust estate, because, if the statute was intended only as a protection to beneficiaries by way of limiting the power of trustees to lease, no good reason can be suggested why it should have applied only to trusts for the life of a beneficiary, and not to one for a shorter period, or to those mentioned in subdivisions 2 and 4 of section 76 of the Real Property Law (Laws 1896, p. 571, c. 547); and it might have been considered that in the case of the latter trusts the trust term was sufficiently definite so that the trustee could know with reasonable certainty how long a term might be safely provided without danger of extending beyond the period of the trust, while in the case of a trust measured by a life the contingency upon which the trust might terminate was so uncertain as that the statute should afford some protection for a lease which might possibly extend beyond the trust term. Section 65, as amended by said chapter 886, p. 715, of the Laws of 1895, was embodied by the revisers in the real property law (chapter 547, pp. 573, 574, Laws 1896) and became sections 85, 86, and 87 thereof; the only change being that instead of inserting the provision in respect to leases by trustees for a term not exceeding five years, without application to the court, as a saving clause at the end of the section, it was inserted at the beginning in the permissive language already quoted. Shortly before the passage of said chapter 547 of the Laws of 1896 the case of Losey v. Stanley, 147 N. Y. 560, 42 N. E. 8, was decided; but it is very likely that this decision was not published in the official Reports, at least until after the revisers had completed their work in respect to said statute. That case decided that the amendment of 1886 relative to mortgage and sale did not vest in the court power to order a sale or mortgage of anything more than the trust estate, intimating that, if the provision was intended to have affected the rights of adult remaindermen, it was unconstitutional, and that, so far as the interest of infants or incompetents was concerned, it was not designed to take the place of section 2348 et seq. of the Code of Civil Procedure, relative to the sale or mortgage of infants' real estate, basing this conclusion mainly upon the fact that the amendment provided for service of the notice only upon the beneficiaries. This construction of the statute

would undoubtedly have settled the question that it was not designed to give validity to a lease so far as it extended beyond the trust term, were it not for the fact that the Legislature again amended the statute by chapter 136, p. 49, Laws 1897. This amendment following so soon after the decision of Losey v. Stanley, supra, is very significant, and indicates clearly that it was designed to meet the questions raised by said decision, because it provided for notice in respect to either sale, mortgage, or lease to "every person having an estate, vested or contingent, in reversion or remainder," and also for the appointment of a guardian ad litem for infants and incompetents, and that a mortgage, conveyance, or lease made pursuant to a final order granted as therein provided should be valid and effectual against all infants and incompetents, and against all adults so far as the Legislature evidently regarded that it had the power to provide within the authority of Losey v. Stanley, supra. The statute as thus amended was clearly an enabling statute, not only as respects mortgages and sales, but as well as respects leases, the Legislature having attempted to make leases executed in the manner provided valid and binding upon remaindermen after the expiration of the trust term so far as it had the power to do so. It is unnecessary to determine now to what extent the Legislature has succeeded in that purpose, as it is sufficient for the purposes of this decision to determine that such was the purpose of the statute, as clearly evidenced by the language employed when the amendment respecting leases was first introduced, by the language of the statute as amended in its present form, by its context, and by the history of the legislation. The purpose of the statute being to enlarge, rather than to restrict, the powers of the trustee, words intended as a saving clause should not be given an unusual meaning in order to accomplish a purpose which we cannot say was in the mind of the Legislature. If it had been the intention of the Legislature to change the existing law, of which they are presumed to have had knowledge, and to limit the power of the trustee, it would have been very easy to have done so in plain and simple language free from ambiguity; and, although permissive language may be construed as being restrictive, such construction is not adopted unless necessary to effectuate the clear intention of the Legislature. If the section in question had created a power in respect to leases for five years not theretofore existing, such power could be exercised only in the manner provided by the statute; but where the power to lease theretofore existed, permissive language used in a statute should not be construed as restricting or limiting the power theretofore existing, where it is perfectly apparent that the purpose of the statute was to accomplish an entirely different end. The question before us is not whether the defendant can lawfully execute a renewal lease which should be binding upon remaindermen in case of the termination of the trust by the death of the life beneficiary, but whether such a lease can be made valid, as between the parties, subject only to the contingency of being terminated

by the death of the life beneficiary during the term of the lease. My conclusion is that the power of the trustee to make such a lease existing prior to the amendment of 1895 has not been affected by that or the subsequent amendments to the statute. This question was not involved in Niederstein v. Cusick, 83 App. Div. 36, 81 N. Y. Supp. 1058.

But it is objected by the defendant that the clause of the lease giving the plaintiffs the option of renewal is void, in that it provides that the rent shall be $11,000, and one-half of the excess over said sum for which the appraisers therein appointed shall determine said premises can be rented to a responsible party for said period; and that, said appraisers having determined that $15,000 is the fair rental value, the renewal of the lease for $13,000 per year would constitute a waste, and result in loss to the life beneficiaries of the sum of $2,000 per year, or $10,000. It is undoubtedly true that the court will not compel a trustee to commit waste, nor will it compel a trustee to do an act the doing of which would be restrained at the instance of the beneficiary, but will leave the parties in the situation in which it finds them to whatever remedies an action at law might afford. It appears that the option agreement was made in consideration of the plaintiffs agreeing to prosecute an appeal in the case of Zipp v. Weir in the Court of Appeals, and, if successful, to build upon the courtyard space involved in said litigation; and also in consideration of the plaintiffs taking up the option made on June 4, 1897, for five years from May 1, 1900, at $11,000 per year, which was an increase over the rental theretofore paid of $2,000 per year. There is no statement in the agreed facts as to the rental value of the premises during the five years from May 1, 1900, nor is there any statement as to the expenses incurred in the prosecution of the case of Zipp v. Weir, or of the reasonable value of whatever efforts the plaintiffs put forth in that behalf. The following statement is, however, contained in the admitted facts:

"(12) That the act of the plaintiffs in taking up the option made on June 4, 1897, for five years from May 1, 1900, at $11,000 per year, increased the income of both Charles G. Barker and Samuel P. Barker to the extent of two thousand dollars ($2,000) per year for five years, and that the successful prosecution of the appeal in the case of Zipp v. Weir in the Court of Appeals would have given the defendant the right to build on said courtyard space fifteen feet (15 ft.) by seventy-two feet (72 ft.) and six inches (6 in.), and would thereby have increased the income of said estate applicable to said Charles G. Barker and Samuel P. Barker to a considerable extent per year, and have added materially to the value of said property, and increased the value of said tenancy to a material extent."

It is insisted by the plaintiffs that this is an admission that the act of the plaintiffs in taking up the option increased the income of the life beneficiaries to the extent of $2,000 per year in excess of what they would otherwise have received, while the defendant contends that the admission was simply intended to mean that it increased their income to that extent in excess of the amount which they had previously been receiving; and it is quite possible that the language is susceptible of the latter construction, although the

purpose of this statement in the agreed facts was evidently to show the consideration supporting the option agreement; and, if it is to have the construction claimed on behalf of the defendant, it might be suggested that it would have occurred to the parties that the court could subtract 9 from 11, and ascertain the fact without the aid of a computation contained in the statement of agreed facts. Thus we are asked not only to construe the statute, but as well the statement of agreed facts upon which this controversy is submitted to the court. It might be urged with some force that the act of the plaintiffs in taking up the option agreement was not the cause of increasing the income of the beneficiaries $2,000 per year if the premises could have been leased for the sum of $11,000 during the period covered by said renewal lease; but it is unnecessary to determine this question, as the court will not presume that the act of the trustee in making this agreement was improvident; and it appearing by the agreed facts that the option agreement was supported by a consideration, to wit, the taking up of the option for five years from May 1, 1900, and the prosecution of the case of Zipp v. Weir, and the agreement to build on the premises if said litigation resulted favorably, in the absence of facts showing that such consideration was not adequate to support the option agreement this court will presume for the purposes of this action that it was. The agreement sought to be enforced is the personal agreement of the trustee, and the determination of this action requiring the trustee to perform her agreement cannot affect the rights of the beneficiaries not parties to said agreement as between them and the trustee; and if in fact the consideration moving from the plaintiffs was ample to support said agreement, injustice would result to them if the defendant were now permitted to violate it.

It is further objected that, the option agreement having provided for an appraisal by the Chauncey Real Estate Company and by the firm of John F. James & Sons, and that John F. James, one of the members of said latter firm, having died prior to the appraisal, that firm ceased to exist, and therefore no provision having been made in the contract for an appraisal in any other manner, it is impossible to carry out the agreement made by the parties, and the court will not compel parties to submit to arbitration or appoint arbitrators for them. It is undoubtedly true that the present firm of John F. James & Sons is not the firm designated in the agreement as one of the appraisers. The defendant cannot be compelled to accept an appraisal by a different firm than the one agreed upon, and it may be urged with some force that the defendant's agreement to renew was conditioned upon the amount of rental being determined by the persons stated in the agreement, and that, such determination being rendered impossible by the death of one of the appraisers, the defendant cannot be required to accept a valuation determined in a different manner. The plaintiffs having exercised their option of renewal by serving notice thereof on the defendant, the agreement to renew became mutual

and binding upon both parties. The term of the renewal lease is fixed by the agreement, and all that remains is a mere matter of detail in determining the rental value. Had the parties reserved to themselves the right to agree upon the rent to be paid, specific performance of the agreement could not be compelled, but, having agreed that the rental should be determined in accordance with the rental value of the premises, such value to be determined by persons stated, it cannot be assumed that the parties relied upon such persons fixing a value in excess of the real value. The method agreed upon having been rendered impossible by the death of one of the parties selected, a case peculiarly for equitable relief is presented, as the court is not powerless to grant relief in such a case, and it will not be assumed that the actual and fair rental value cannot be determined by the court. The refusal to entertain jurisdiction would deprive the parties of the benefit of a valid contract by reason of the happening of a contingency which neither contemplated when the contract was made. If the court cannot afford relief, it must admit its inability to do equity. The court can determine by reference the fact and compel performance of the contract according to its spirit and intent, and thus secure exact justice between the parties. This was decided by the well-considered case of Kelso v. Kelly, 1 Daly, 419, the doctrine of which case has frequently been cited with approval by the courts of this state, and has not been questioned or disapproved by any decision which I am able to find. The decision in that case was made upon the authority of Johnson v. Conger, decided by the General Term, reported in 14 Abb. Prac. at page 195, and of Gregory v. Mighell, 18 Ves. 328, and Gourlay v. The Duke of Somerset, 19 Ves. 430. The same proposition was decided in Viany v. Ferran, 54 Barb. 529, and Van Beuren v. Wotherspoon, 12 App. Div. 421, 42 N. Y. Supp. 404; and the case of Smith v. Rector, 107 N. Y. 610, 14 N. E. 825, holding that, although the court could not compel the parties to submit to an arbitration, it could nevertheless secure to them the benefit of an arbitration agreement contained in a renewal clause of a lease, would seem to be analogous to the question raised here.

If the defendant does not desire to accept the appraisal in this case, a referee may be appointed by the court at Special Term to ascertain what sum said premises can be rented for to a responsible party for the said term of five years from May 1, 1905, and the plaintiffs should have judgment accordingly.

Judgment for plaintiffs, without costs, upon submitted controversy, in accordance with opinion of MILLER, J. All concur, except WOODWARD, J., not voting.