AIMONE MANUFACTURING COMPANY, Respondent, *v.* CARL RUDOLPH SCHULTZ and Another, Individually and as Surviving Trustees of LOUISE SCHULTZ, and ORLA RUBSAMEN, as Receiver of the Property of Said Trust, Defendants, Impleaded with ORLA RUBSAMEN, Individually and as Trustee and Receiver, etc., Appellant.

First Department, June 6, 1924.

Trusts — trust for benefit of donor with remainder to children — renewal clause in lease by trustee for five years which was not made with approval of court is invalid under Real Property Law, § 106 — renewal clause could not extend term beyond termination of trust and it is invalid under Real Property Law, § 105 — oral lease not shown — tenant having held over after termination of original lease it became tenant by year.

A renewal clause in a lease for five years executed by a trustee of a trust created for the benefit of the donor with the remainder to her children, which was not approved by the court, is invalid under section 106 of the Real Property Law providing that a trustee appointed to hold real property during the life of the beneficiary and to pay or apply the rents for the benefit of the beneficiary, may execute a lease for a term not exceeding five years without application to the court.

Furthermore, the renewal clause cannot extend the lease beyond the termination of the trust and its provisions are invalid under section 105 of the Real Property Law in so far as they seek to bring about that result which would be brought about in this case if the renewal clause was held to be valid, inasmuch as the trust terminated by the death of the beneficiary before a renewal lease was executed.

The existence of an oral lease alleged to have been executed prior to the death of the beneficiary is not shown and in fact the evidence shows that there was no intention to make an oral lease but that it was the intention of the parties in their negotiations to execute a renewal lease under the renewal clause which was assumed to be valid.

The tenant having held over after the expiration of the original lease, it became a tenant from year to year.

APPEAL by the defendant, Orla Rubsamen individually and as trustee and receiver, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county

First Department, June, 1924.                    [Vol. 210

of New York on the 12th day of June, 1923, upon the report of a referee appointed to hear and determine the whole issues, which directed that the defendants, as surviving trustees, specifically perform an agreement made by them to give a five-year lease on property situated on East Twenty-second and East Twenty-third streets in the city of New York.

*Griggs, Baldwin & Baldwin* [*Henry T. Hall* of counsel], for the appellant.

*Pendleton, Anderson, Iselin & Riggs* [*Ellery O. Anderson* of counsel], for the respondent.

MARTIN, J.:

The facts in this case are substantially undisputed and are shown by the exhibits and correspondence between the parties.

The plaintiff has for over twenty-five years been the lessee and occupant of the factory buildings owned by the defendant trustees and their predecessors, at Nos. 431–437 East Twenty-second street and at Nos. 430 and 436 East Twenty-third street, in the city of New York. It has carried on its business in these buildings during this period as tenant under successive written leases.

The plaintiff has owned for twenty years the adjoining building on East Twenty-second street, known as No. 431 East Twenty-second street, which is connected with and used by it in conjunction with the leased property.

The last of the written leases referred to is dated July 2, 1915, and was made between plaintiff and Carl Rudolph Schultz, Carl Walter Schultz and Orla Rubsamen, as trustees of Louise Schultz, and was for a term of five years from May 1, 1916, with a renewal privilege for a further term of five years from May 1, 1921, conditioned on the tenant's giving notice in writing prior to May 1, 1920, of the exercise of its option to take such further term.

Carl Walter Schultz, one of the trustees, died in the month of August, 1919. The trustees, who were the children of Louise Schultz, were, by a deed of trust dated November 17, 1909, made by said Louise Schultz, appointed as trustees of certain realty in the city of New York, including the property so demised, to hold said realty and pay over the income realized therefrom to Louise Schultz during the term of her natural life, and upon her death to divide said realty equally among the children of the first marriage of Louise Schultz and the issue of any deceased child.

This deed was made by Mrs. Schultz in contemplation of her marriage to Richard Sievers. Mrs. Louise Schultz Sievers died

on July 29, 1921, the trust created by her thereby terminating at that time.

For many years prior to December 1, 1920, Carl Rudolph Schultz, Carl Walter Schultz and Orla Rubsamen, acting as trustees under the deed of trust, were represented by Theodore Hansen, attorney at law. He witnessed the lease dated July 2, 1915. He was fully authorized to represent and act for and on behalf of said trustees in all matters relating to the successive leases and tenancies covering the premises occupied by the plaintiff as tenant.

The plaintiff in like manner had been represented by an attorney, P. Chauncey Anderson, who had full authority to act for and on its behalf in respect to the said successive leases and the tenancy thereunder.

Negotiations had been carried on by the attorneys representing the respective parties, practically without any actual participation therein by them.

On February 10, 1920, pursuant to the provisions of the lease of July 2, 1915, plaintiff notified the trustees in writing that in accordance with the terms thereof it exercised the privilege of renewal for a further term of five years from May 1, 1921.

Shortly thereafter, Mr. Anderson, during April, 1920, in a number of interviews with Mr. Hansen, took up with him the matter of the preparation of a new lease for five years and of certain repairs which the landlord had agreed to make by the provisions of the lease of July 2, 1915, but which had not been made, and there was thus discussed the incorporation into the new lease of a provision relating to such of those repairs as still were necessary and had not been made. Extensive negotiations relative to these repairs followed, from July to September, 1920, and also in relation to the obligation of the plaintiff to install a sprinkler system for the buildings leased to it, as well as for the adjoining building owned by it on East Twenty-second street.

On April 28, 1920, Mr. Anderson wrote to Mr. Hansen and requested him to send a draft of this new lease so it might be executed before May 1, 1920. On July 1, 1920, Mr. Anderson sent to Mr. Hansen a proposed lease embodying the terms agreed upon for a further term of five years commencing May 1, 1921. which contained a list of the repairs to be made by the landlord,

This proposed lease was not executed by either of the parties. There was discussion whether the landlord or the tenant was, under the terms of said lease of July 2, 1915, to make the various repairs.

Carl Walter Schultz died in August, 1919, and shortly thereafter a dispute arose between the two surviving trustees. As a result

thereof, in the fall of 1920, an order dated November 24, 1920, was made in an action brought in the Supreme Court by Carl Rudolph Schultz, as surviving trustee, against Orla Rubsamen, as surviving trustee, appointing said Orla Rubsamen as receiver *pendente lite* with power to take and manage the trust estate and to collect the rents thereof, to pay the expenses and pay over the net income to the beneficiaries in accordance with the declaration of trust recited in the complaint in said action.

On December 6, 1920, Theodore Hansen notified the plaintiff that he would no longer attend to the matters connected with the estate and requested that the plaintiff send its check for the rent to Orla Rubsamen, as receiver of the Schultz estate, and thereafter, on December 3, 1920, Griggs, Baldwin & Baldwin, the present attorneys for Orla Rubsamen, by letter notified the plaintiff of the appointment of Mrs. Rubsamen as receiver and requested the rent be paid to her.

Henry T. Hall of that law firm, in place of Mr. Hansen, then continued with Mr. Anderson the discussion of the repairs and the sprinkler system, and it has been stipulated in the action that he was fully authorized to represent and act for and on behalf of the said trustee in all matters relating to the successive leases and tenancies affecting the premises.

On January 27, 1921, after an interview which Mr. Hall had with Mr. Anderson, they met with R. C. Aimone, the treasurer and general manager of plaintiff, and with his son, R. L. Aimone, at the factory building. They went through the entire building and Mr. Anderson told Mr. Hall that if these repairs were not made by the landlord he would advise his client to make the repairs and charge the same against the rent which was to accrue. The order for the sprinkler system was also discussed. Thereafter, on February 2, 1921, Mr. Anderson wrote to Mr. Hall, inclosing a statement of certain work which the plaintiff had done for the account of the landlord, and said that plaintiff would be willing to spread the amount of these expenses over a reasonable period of time.

The appellant contends: (1) That the renewal clause was absolutely void and conferred no rights on the plaintiff; (2) that there was no oral lease of the premises either express or implied, and (3) that even if an oral lease were entered into by the receiver, such lease is subject to the approval of the court, which should not grant its approval because of the unprofitable nature of the contract.

Section 106 of the Real Property Law provides as follows: " When trustee may lease trust property. A trustee appointed to hold real property during the life of a beneficiary, and to pay or apply the rents, income and profits thereof to, or for, the use of such bene-

ficiary, may execute and deliver a lease of such real property for a term *not exceeding* five years, without application to the court." (Italics the court's.)

In this case the lease was for five years with a privilege to the tenant to renew for five more. It was not made by permission of the court. The tenant exercised its option to renew, and the trustees recognizing that fact entered into negotionations which contemplated the execution of a new lease. Before the lease was executed the beneficiary of the trust estate died, thereby ending the trust.

The lease of July 2, 1915, for five years with a renewal clause for five more, was virtually an attempt to make a lease for ten years, and the renewal clause was, therefore, void.

In *Orr* v. *Doubleday, Page & Co.* (223 N. Y. 334) the court held: "Where a tenant holding a lease of premises for ten years, which he was prohibited from assigning, with an option of renewal, gave due notice to trustees under the will of its lessor, who was deceased, of its intention to renew the lease for another term of ten years with the understanding that such notice would be withdrawn if the court consented to accept a transfer of the lease to another party, in which event the landlord was to consent to an assignment thereof, and some months thereafter demanded an acknowledgment of the receipt of such notice, it must be held that it was the withdrawal of the notification and not the taking of the new term which was conditioned upon the approval of the court and the consent of the lessors. There was nothing to be acted upon by them, and where the conditions permitting the annulment of the notification never existed the notification remained. The notice was complete and absolute, whether or not the lessors acknowledged it, and acknowledgment was not essential to its inception and operation. The exercise of the option of renewal by the tenant perforce extended the term of the lease for the additional term of ten years, the last half of which was to take effect at the termination of the first and, therefore, a new lease for the additional years was not necessary. (*Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310.)"

It would seem, therefore, that a lease for ten years with an option for renewal of ten more, becomes, at the tenant's option, in effect a lease for twenty years.

In *Weir* v. *Barker* (104 App. Div. 112) Mr. Justice MILLER, writing for the court, said: "It was undoubtedly the settled law of this State at the time of the original passage of the act in question in 1895 that such lease was not binding on remaindermen, but was valid only for a period ending with the trust term.   *   *   *

That the purpose of the statute was not to restrict any power which the trustee then had. * * * That the purpose of the statute was to enable a lease to be made valid for a term extending beyond the trust estate."

The purpose of the statute appears to have been to grant the power to make a valid lease which would survive the death of the life tenant and thereby remove all uncertainty with reference to its term.

Even if we were to assume that a lease for more than five years, entered into without permission of the court, is binding, it is clear that in no event could it be binding beyond five years and the termination of the trust by the death of the life beneficiary.

The option to renew could not extend the lease beyond five years and the termination of the trust and its provisions are invalid in so far as they would bring about such a result. (See Real Prop. Law, § 105; *Matter of City of New York* [*110th Street*], 81 App. Div. 27.)

The existence of an oral lease is also asserted. That there was no intention to make an oral lease for five years, and no part performance of such a lease, is apparent from an examination of the record. All of the negotiations were in preparation for a renewal of the written lease for five years. The existence of an oral lease was expressly negatived by the notice of February 10, 1920. The fact is that the respondent supposed the renewal clause was valid, acted upon that supposition and assumed the risk of error.

The tenant, however, having held over under a void lease after May 1, 1921, the tenancy thereafter became a yearly tenancy. (*Kernochan* v. *Wilkens*, 3 App. Div. 596.) That concession is made by the landlord.

Having reached the conclusion that the renewal clause is without effect and that the alleged oral lease for five years was not proved, the tenant now has a lease from year to year only.

The judgment must be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., MERRELL, FINCH and McAVOY, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.