## Frankford Trust Co. et al., Appellants, *v.* D. A. Schulte, Inc., et al.

Argued December 4, 1930. Before Frazer, C. J., Walling, Simpson, Kephart, Sadler, Schaffer and Maxey, JJ.

*Lloyd Moore* of *Moore, Gossling & Panfil,* with him *Francis Mallon* and *Edwin S. Ward,* for appellant.— A testamentary trustee has no authority to make a lease for a term of more than five years without leave of the orphans' court first obtained: Standard Metalic Paint Co. v. Mfg. Co., 133 Pa. 474; Penna. H. Society v. Craig, 240 Pa. 137; Craig's Est., 24 Pa. Dist. R. 851; Freeman's Est., 181 Pa. 405; In re Philadelphia, 2 Brews. 426; Archambault's Est., 29 Pa. Dist. R. 77.

The lease which was made in 1924 to commence in 1930 for a period of twenty-five years was not a reasonable one considering the nature and location of the property and the probable duration of the trust, with due consideration of the interest of those entitled in remainder as well as the life tenants.

Section 31 of the Pennsylvania Fiduciaries Act of June 6, 1917, P. L. 447, 499, does not violate article III, section 3, of the Constitution of the Commonwealth of Pennsylvania which requires that the subject of the act be expressed in the title: Allegheny County Home's Case, 77 Pa. 77; Com. v. Dickert, 195 Pa. 234; Com. v. Snyder, 279 Pa. 234; Reber's Petition, 235 Pa. 622; Reeves v. Water Co., 287 Pa. 376; New Castle City v. Withers, 291 Pa. 216.

*Maurice Bower Saul,* of *Saul, Ewing, Remick & Saul,* with him *Roy M. Livingstone, Earl G. Harrison* and *Henry L. Schimpf, Jr.,* for appellees.—The lower court's construction of the Fiduciaries Act regarding leases by trustees is proper: Diver v. Diver, 56 Pa. 106; Smith

v. Ry., 182 Pa. 139; Strain v. Kern, 277 Pa. 209; Arch-
ambault's Est., 29 Pa. Dist. R. 77.

If section 31 of the Fiduciaries Act must be construed
as taking from trustees the power to make a lease in
excess of five years without the approval of the or-
phans' court, it is unconstitutional as the title does
not clearly express a purpose either to decrease the
common law powers of a trustee, or to declare such
a lease void or voidable: Strain v. Kern, 277 Pa. 209

In the absence of a specific limitation in the instru-
ment creating the trust or defining the powers of the
trustee, the law places no limitation upon the term
for which the trustee may lease, except that ordinarily
he may not lease beyond the "life" of the trust; where
he does so, the excess, alone, is to be struck down:
Craig's Est., 24 Pa. Dist. R. 851.

OPINION BY MR. JUSTICE SADLER, January 5, 1931:

Annie J. Conner died on April 5, 1910, testate, seized
of a property located in the City of Philadelphia, leav-
ing three adult children, Alice, Annie and Norman.
By the will, the daughters were named executrices,
and, with their brother, later declared incompetent,
but still living, made residuary legatees of the estate
directed to be held in trust, with provision that "in
case of the death of one, his or her share go to the other
two." The power to buy and sell, as well as improve
the estate, was granted to those named to administer
it, but no express direction to lease appears. Annie
died intestate, without issue, on January 28, 1918, and
the survivor, Alice, continued to manage the property
until her death on November 9, 1927. Thereafter the
Frankford Trust Company and two individuals, the
parties plaintiff here, were substituted as trustees un-
der the will of the mother.

Part of a building which the testatrix owned at the
time of her death is the subject of the present litiga-
tion. It was let by the acting fiduciary in 1919 for the

term of ten years from March 1, 1920, at a rental of
$5,000 for the first five years and $6,000 for the second,
to Smyser & Scott, owners of an adjoining property.
The sums received from the other portions of the struc-
ture raised the total revenue to $11,760. On May 12,
1924, the surviving executrix and trustee of her moth-
er's estate demised, for a present consideration of
$9,000, to be applied on account of rental thereafter
to accrue, the whole premises to D. A. Schulte, Inc.,
then a subtenant under the first named lessee, for the
term of 25 years, to begin on March 1, 1930, for the
annual net sum of $18,000, the tenant agreeing to pay
the taxes, water rent, insurance and repairs.

On March 16, 1926, a second tripartite agreement
was entered into between Alice, the Schulte Company
and the surviving partner of Smyser & Scott, by which
provision was made for the occupancy of the property
until the beginning of the new term in 1930. The then
tenants agreed to make changes for the mutual bene-
fit of all interested, to pay the sum of $10,000 for the
benefit of the Conner Estate, and make as well large
outlays for alterations and improvements; Smyser &
Scott being given the right to make openings between
the store occupied by them and the building acquired
by the lessee. The two cash advancements referred
to were duly accounted for by the acting trustee. The
guardian of Norman, the incompetent brother, and the
surviving life tenant of the residuary estate, had in
each case notice of the contracts entered into, and in
neither instance objected, though no formal request
to the court for permission to approve the agreements
on behalf of his ward was made.

After the death of Alice, the surviving sister, the
substituted trustees filed, on September 7, 1928, this
bill in equity, having for its purpose the cancellation
of the two leases made, insisting the same were invalid
in view of the length of the term granted, and alleging
as well that the provision made for rental payments

was inadequate. Answers were filed raising objections to the granting of the relief prayed for, but no suggestion appears in the pleadings that the court of common pleas was without jurisdiction to settle the controversy. It is contended for the first time in the brief here filed by the appellants that the orphans' court was given sole control of acts of trustees by the Revised Price Act (June 7, 1917, P. L. 388, section 2), but it will be noted that this grant of authority is limited by section 3, which expressly declares the statute shall not repeal or impair the authority of any act authorizing decrees of court as to real estate (as provided by section 31 of the Fiduciaries Act of June 7, 1917, P. L. 447), "nor affect or impair any rights or powers otherwise existing in any person or corporation." If the surviving trustee here possessed the right to lease for the term in question at the risk of the continuance of the life estate for the period fixed, and could show the transaction fair and conscionable if attacked, as in this case, even though he failed to protect against possibility of error in the manner permitted by the legislation above referred to, then the Revised Price Act clearly has no application.

The chancellor below declared the court of common pleas had jurisdiction to proceed, though its right had not been formally questioned, saying, in the discussion, this power existed, since the "matter involved was not one of audit and distribution of a trust fund, but of the rights of parties not concerned in a decedent's estate under a contract with the trustee to which they were parties." We may disregard the Act of June 7, 1907, P. L. 440, which requires that objection to a proceeding in equity shall be preliminarily raised, since it will be noticed that the plaintiffs, now complaining on this ground, were the ones who instituted the proceeding and asked for equitable relief. The question need not have been considered by the court below; nor is the objection raised in the assignments of error here

presented, or mentioned in the statement of questions involved, which makes it impossible for us to review the question now suggested, even if it had merit: Fidelity Title & Trust Co. v. Weitzel, 152 Pa. 498.

The legal proposition requiring discussion is the right of the then trustee to lease the property of the decedent for a term in excess of five years. Such an instrument can only be effective during the life of Norman, and thereafter those in interest will have standing to object to its continuance on the ground that the contract is unenforceable, for such a contract terminates with the ending of the trust estate: Standard Metallic Paint Co. v. Prince Mfg. Co., 133 Pa. 474. It will be noticed that no special power to let the property appears in the will, and any such obligation assumed by the trustee was entered into at her risk, for she would be personally liable to the lessee for the performance of any covenants entered into, after the death of the last life tenant. At common law, however, the right to demise the property existed at the peril of the one so contracting. Judge GEST considered the extent of the trustee's power in this regard disputable, saying, in Craig's Est., 24 Pa. Dist. R. 851, 853: "From our examination of this doubtful question, it would appear that a trustee has at most a general implied power to lease for such a term as is reasonable and customary, considering the nature and location of the property, and the probable duration of the trust, with due consideration of the interests of those entitled in remainder as well as the life tenants."

As a result of this declaration, and to clarify the rights of the parties in such cases, the commissioners appointed to revise the law of decedents' estates, as they state in their report (page 185), inserted section 31 in the Fiduciaries Act, and expressly gave to the trustee the right to execute a lease, unless otherwise provided by the will, for not more than five years, with consent of the orphans' court for a longer period

if deemed expedient by it. The legislation referred to provided that the trustee should be absolved from any personal liability in the event of the trust estate ending prior to the stipulated term of leasing by reason of the ending of the life interest. This statute did not purport to take away from the trustee the right to lease for a greater period than five years at his own risk, but did adopt a plan by which he would be safeguarded when such a contract was made for a longer period and the life estate ended prior to the time fixed in the demise, and the orphans' court had preliminarily determined the terms to be advantageous.

Prior to the adoption of the Act of 1917, the court named could authorize a letting, though covering a considerable period of time (Freeman's Est., 181 Pa. 405; Penna. Horticultural Society v. Craig, 240 Pa. 137), ending, however, with the death of the life beneficiary, and the trustee cannot now demise, for more than five years, the property in his care, to be effective beyond the life of the cestui que trust, unless previous consent is secured. No indication is given, however, in the Fiduciaries Act that the power theretofore existing in the trustee was withdrawn. The section referred to merely provided a method by which a lease for a longer term than five years could be made without the fear of surcharge in case of the death of the beneficiary during the term designated, continuing the tenancy notwithstanding, and gave to the trustee protection in such case, if it should later appear that the terms approved by the court were found to be improvident. Our attention has not been called to any Pennsylvania decision which holds to the contrary, nor has our research disclosed any so deciding.

In the sister State of New York a like situation arose under the so-called Real Property Law of 1896 (page 573, chapter 547, section 76). By the legislation referred to the approval of leases exceeding five years could be secured from the court, and the trustee thus

saved from loss in case of the expiration of the trust estate before the ending of the term. It was there held that such an act did not limit the right of the trustee to let the premises in his control as theretofore existing, since the purpose of the statute was to enlarge rather than to restrict his power. It was said, in part, in Weir v. Barker, 104 App. Div. 112, 93 N. Y. Supp. 732, 737: "If it had been the intention of the legislature to change the existing law, of which they are presumed to have had knowledge, and to limit the power of the trustee, it would have been very easy to have done so in plain and simple language free from ambiguity; and, although permissive language may be construed as being restrictive, such construction is not adopted unless necessary to effectuate the clear intention of the legislature. If the section in question had created a power in respect to leases for five years [or longer] not theretofore existing, such power could be exercised only in the manner provided by the statute; but where the power to lease theretofore existed, permissive language used in a statute should not be construed as restricting or limiting the power theretofore existing, where it is perfectly apparent that the purpose of the statute was to accomplish an entirely different end. The question before us is not whether the defendant can lawfully execute a lease [with an option to renew, extending the term beyond five years], which should be binding upon remaindermen in case of the termination of the trust by the death of the life beneficiary, but whether such a lease can be [validly] made, as between the parties, subject only to the contingency of being terminated by the death of the life beneficiary during the term of the lease." The decision cited has been followed by the courts of the same state in Aimone Mfg. Co. v. Schultz, 210 App. Div. 41, 205 N. Y. Supp. 170, and Raynolds v. Browning, King & Co., 217 App. Div. 443, 218 N. Y. Supp. 876. In the former case it was said: "The purpose of the statute

appears to have been to grant the power to make a valid lease which would survive the death of the life tenant, and thereby remove all uncertainty with reference to its terms." Attention has been called to 39 Cortlandt Street Corporation v. Lambert, 209 App. Div. 575, 205 N. Y. Supp. 161, in which it was held that the lease terminated for the reason that the trust had ended prior to the time of the commencement of the term fixed. Instead of overruling what had been previously declared, the case cites with approval Wier v. Barker, supra, above referred to.

The reasoning of the New York cases mentioned is applicable to the present situation. Section 31 of the Fiduciaries Act recognized the right of the trustee to lease for more than five years, but furnished to him protection in case the trust terminated within the term fixed, or the consideration was found later to be insufficient, if preliminary sanction of the orphans' court had been obtained. This was an expansion and not a limitation of the implied power of the trustee to act on his own initiative and at his own peril as theretofore existing. The life tenant of the property in question is now living, and only 57 years of age. Should he die during the term granted to defendants their rights cease, though the lease purported to transfer possession for twenty-five years from 1930. Until this event occurs, the substituted trustees have no standing to object. Nor can they complain of the reasonableness of the arrangement consummated, if the trustee had the power to enter into it. The relief prayed for cannot be granted on the ground of alleged insufficiency of the consideration contracted for, in view of the express declaration of the court that it is fair to all concerned. The chancellor found, on ample evidence, that the value of the property in 1924, when the contract was made, did not exceed $225,000, and that "a return of $18,000 a year net rental, over and above taxes, water rents,

insurance and repairs, paid by the tenant, is an adequate return."

The conclusion reached makes unnecessary a consideration of the suggested unconstitutionality of section 31 of the Fiduciaries Act because of defect in title, a contention based on declarations found in Strain v. Kern, 277 Pa. 209; nor need we discuss the rights of the parties under the will (Archambault's Est. (No. 1), 232 Pa. 344), the standing of complainants to ask for a rescission in view of their failure to offer restitution to the lessees, who made large expenditures on the strength of the contracts, or the possible laches of the substituted trustees in failing to file the bill now before us at an earlier date.

The decree of the court below is affirmed at the cost of appellants.