the contrary, manifests a legislative intent that it shall, under no circumstances, be entitled to reimbursement directly from the estate of the indigent insane or those liable for his support or maintenance.

Decree affirmed. Costs to be paid by appellant.

Beutel Estate.

238

[redacted]

Argued April 19, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, and PARKER, JJ.

[redacted]

The facts are stated in the opinion by VAN DUSEN, P. J., of the court below, VAN DUSEN, P. J., STEARNE, SINKLER, KLEIN, BOLGER and LADNER, JJ., as follows:

This trust held a mortgage of $26,500 on premises 3136-38 Market Street and 3139-41 Ludlow Street. It was overdue in March, 1930. Provident Trust Company, one of these trustees, at that time took a mortgage of $55,000 on the property, of which $26,500 was allocated to this estate, and the proceeds were used to pay off the existing mortgage of that amount. The new mortgage was taken on the basis of a contemporary appraisement of the property at $115,000. The appraiser was an employee of the Trust Company. This does not disqualify him: *Saeger Estates,* 340 Pa. 73; *Harton's Estate,* 331 Pa. 507.

The same appraiser had valued the property in January, 1930, at $65,000, when the only question under consideration was the security of the existing mortgage of $26,500. He testified that his second appraisement was more full and careful than the first appraisement. Generally speaking, the Trustee is protected under the Act of 1929 by an appraisement made by a competent ap-

praiser and need not go beyond it. Of course, if circumstances come to the notice of the trustee which intended to discredit an appraisement, they are not entitled to rely on it. We do not think that the prior appraisement, under the circumstances, is such a fact as tends to discredit the later appraisement.

It is argued that the appraiser now says that he considered the "potentialities" of the property in making his appraisement, and that this means that he was acting upon future and not present values. Even if this is a correct conclusion, there is nothing to show that the trustees knew this.

At the time this mortgage was taken in March 1930, the taxes due for the current year were not paid. Technically, real estate taxes in this county are due on the first day of the year. In practice, however, mortgagors are not required to produce their tax receipts until much later in the year, usually September; more recently, July. Undoubtedly it would have been wiser for the trustee to have insisted upon payment of these taxes at the settlement, but failure to do so certainly does not stamp the whole investment as imprudent.

It is objected that the property did not earn interest and taxes at the time the mortgage was taken. This objection is met by the decision in *Heyl's Estate*, 331 Pa. 202.

A more serious objection is that interest due September, 1930, was not paid on time, and was not paid in full until two months later; that interest due March, 1931, was not paid on time and was paid in installments of which the last was paid June 2, 1932; that 1930 taxes were never paid; and that, nevertheless, the trustees did not take possession and control the income from the property until September, 1931. See *Goldman's Estate*, 19 D. & C. 65.

The Auditing Judge found "that there has been no mismanagement of the investment." This finding is the subject of the eighth exception to the adjudication. At

the audit the objecting parties followed the commendable practice of stating in writing the objections which they made to the conduct of the trustees. No objection on this ground was so made to the Auditing Judge. The trustees argue that if the question had been raised, they would have had an opportunity to show what went on in the interval. We think that the objecting parties are not in a position to except to this finding of the Auditing Judge.

Some time after the mortgage was foreclosed, the Provident leased the property for a ten-year term. One of the trusts under the will had terminated before the lease was made. It is objected that the trustee was without power to make this lease because of the provisions of Section 31 of the Fiduciaries Act. This Section gives a testamentary trustee power to make a lease of real estate for a term not exceeding five years; and for a longer term by leave of Court. This is an extension of the common law power of trustees, who could not give a lease extending beyond the term of the trust. See *Frankford Trust Co.* v. *D. A. Schulte, Inc.*, 302 Pa. 421. This real estate is held in a mortgage salvage operation. It is not real estate of the testator, but is in theory personal estate. The statutory provision referred to does not apply to such a situation as this. This mortgage is held in shares for other trusts, as well as this one. The trustees are bound to do all that is prudent to save the investment, and there is no claim that the lease is imprudent. Even if the trustees had exceeded their powers, the result would be that the lease would be void, and it would not follow that the trustees must make good the investment.

The exceptants claim that a mortgage wherein a trustee is mortgagor by leave of court is not a legal investment. Without expressing an opinion on this point, attention is called to the fact that this trustee and mortgagee had authority to make non-legal investments.

Exceptions 1, 2, 3, 4, 5, 6 and 10 do not require serious notice. However, Exception No. 1, which refers to

an immaterial clerical error, is sustained by agreement. All the exceptions, except No. 1, are dismissed, and the adjudication is confirmed absolutely.

*John P. Jordan,* with him *George O'Dougherty,* for appellants.

*Philip A. Bregy,* with him *Homer H. Hewitt, Jr.,* and *MacCoy, Brittain, Evans & Lewis,* for appellee.

PER CURIAM, May 10, 1943:
The decree is affirmed on the opinion of President Judge VAN DUSEN of the court below. Costs to be paid by appellants.

## Oesterling Appeal.

Argued March 22, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.