In the Matter of the Application of MARY E. SHERMAN for an Accounting and the Removal of WILLARD LESTER, as Trustee, under the Last Will and Testament of BENJAMIN C. SCRIBNER, Deceased.

WILLARD LESTER, Individually and as Trustee, Appellant; MARY E. SHERMAN and Others, Respondents.

Third Department, November 28, 1917.

**Trust — duty and liability of trustee in managing speculative securities.**

Where the value of mortgaged property consisting of an inn was uncertain and its substantial value depended upon its continued operation at the time a trustee was directed by the court to take over a mortgage upon the same from his predecessor, it is unfair to the trustee to order him to pay the nominal value of said mortgage with interest, it appearing that he has exercised good faith and reasonable care in the management thereof.

A trustee receiving securities of uncertain value is only required to account for them as such, and to show that he acted in good faith in dealing with them after they came into his possession and used his best judgment and discretion. He does not guarantee that such securities will realize cash or that he will handle them in the most advantageous manner.

APPEAL by Willard Lester, individually and as trustee, from a decree of the Surrogate's Court of the county of Albany, entered in the office of said Surrogate's Court on or about the 17th day of March, 1917, removing him as trustee and surcharging his accounts.

*Edgar T. Brackett*, for the appellant.

---

* See 100 Misc. Rep. 473.— [REP.

*Benjamin K. Walbridge,* for the respondent Mary E. Sherman.

*Frederick E. Wadhams,* for the respondents Eliza M. Sherman and others.

KELLOGG, P. J.:

By judgment of the Supreme Court, May 16, 1896, the accountant was appointed trustee and directed to receive from his predecessor the property of the trust as it then was, among which was the Wayside Inn mortgage and other mortgages here in controversy. There was past due and unpaid on the Wayside Inn mortgage $15,000 of principal and $412.50 of interest. By the judgment appealed from the trustee is required to substitute cash for that mortgage and all interest thereon and thereupon becomes the owner of it. The value of the mortgaged property at the time it was received by the trustee does not appear. We have, therefore, the result that by the judgment and this decree the trustee is required, in substance, to take a mortgage of speculative and unknown value, paying therefor its nominal value, with interest. The result is unfair to the trustee, and arises from the fact that the surrogate found that the Wayside Inn property was a large frame structure with adjoining buildings, and conducted as a hotel during the summer season, and " that an important part of the value of said property consisted in the good will of the hotel business conducted on said property and the security of said mortgage rested largely on the success of said business and the investment was speculative and hazardous." And concluded, in the opinion, that the trustee " accepted this mortgage as so much cash from his predecessor, and by continuing the mortgage and neglecting to make proper investigation of it, he must be held responsible for its validity as a legal trust investment."

This determination was clearly erroneous. The court placed the securities in the trustee's hands and he is accountable for their value when received, with the increase thereon. If they were speculative and of uncertain value and perhaps unsalable, he is only required to account for them as securities of that class and to show that he acted in good faith in dealing with them after they came to his hands and used his best

Third Department, November, 1917.        [Vol. 180.

judgment and discretion in handling them. He did not guarantee that these speculative securities would realize cash, or that he would handle them in the most advantageous manner. He simply assumed a liability for good faith to do the best he could with them considering their nature when received. If in good faith, and with reasonable care, he had forced the sale, and an apparent great loss resulted therefrom, he would be safe. If in good faith, and with reasonable care, he kept them, maintained and kept the hotel running in the interest of the security but not at the expense of the estate, he is equally safe. Another might have done better or worse; that is not the point.

The prevailing opinion recognizes that the decision of the surrogate is wrong in this respect, but overlooks the fact that his conclusion in that respect necessarily influences and controls the decision of the entire case. If the trustee took cash and loaned it upon a summer hotel, he well might be held responsible. But he only received the mortgage for what it was, and is only responsible for good faith and reasonable care.

The surrogate finds that the value of the Wayside Inn mortgage depended upon the good will of the hotel business and the success of the business. The executor, by various expedients, continued the business; the result was not profitable. But there is nothing to indicate that any greater sum could have been obtained from this mortgage at any time than can now be obtained. It does not appear that any opportunity to sell it ever occurred, and there is not such a finding of bad faith and negligence with reference to this security that can properly justify the decree with reference to it.

The trustee thinks that at the time of the first default, November, 1899, the hotel property could not have realized $10,000 on foreclosure — perhaps not over $5,000; that the property is in better condition now than then, and has been well maintained, and could sell for a better price, perhaps $25,000 to $30,000. We do not find any evidence to the contrary. Apparently it would require about $32,000 to save the estate from loss. If the trustee had, upon the default, foreclosed the mortgage and sold the property at the best price offered, realizing from $5,000 to $7,000 on the debt, he would then be here facing the objection that he had sold the

valuable property at a ruinous price and in a manner which would injure the good will, which was a great part of the value of the property. It is easy to criticise his action. We must view his acts as the situation then was and determine whether they, from time to time, were the acts of an ordinarily prudent man and whether they were in good faith and for the benefit of the estate. The mere fact that the owner of the equity of redemption, who was improving the property and carrying it along at his expense, would profit by the sale, is immaterial unless there was a reasonable probability that the property could have been disposed of to better advantage and the trustee, to benefit a relative, was acting for him and not for the estate.

At the time of the default the mortgagor was willing to turn the property over to the trustee on the mortgage. He, through his attorney, investigated her circumstances, and found that she owned several pieces of unincumbered real estate which were used with and were necessary for the successful operation of the hotel property. He valued those properties at over $11,000, and the valuation is not disputed. He arranged with the mortgagor that the estate would advance her $5,000 and take a mortgage upon this unincumbered property therefor, and as additional security for the hotel mortgage, and she was to carry on the hotel for a year under a manager selected by him. This was done with the idea of improving the security and to present a forced sale, which he felt would be ruinous. This arrangement was carried out. The situation was a difficult one. The mortgaged property was of uncertain value and its substantial value depended upon the continued operation of the hotel. It is not clear that this was an unwise transaction. The trustee evidently acted in good faith. As an original loan it could not well be defended in case of loss; but here was an emergency in which the funds of the estate were in jeopardy. Possibly the trustee did not do the wisest thing. The question is — did he act in good faith and were there reasonable grounds for his action?

If the surrogate believed that the trustee was guilty of a breach of trust in taking the hotel mortgage, he could not approve of this transaction. The fundamental error permeates the whole case, and in order that justice may be done a new

trial should be had so that this error shall not influence the result, but that the case may be tried upon its merits. As we have said, the decree has a basis to rest upon if we assume that the trustee put cash into these hazardous investments. The decision rests upon the erroneous conclusion that the securities came to the trustee as cash and that he is responsible for the unfortunate investment. If he is liable in this case, it is not for receiving the questionable securities but solely for handling them in an improper way, for carelessness and bad faith.

Many other of the securities which result in a charge against the trustee were received by him when he took the trust, and the same questions, to a greater or less degree, are involved with reference to them. We have not discussed them separately but feel that justice requires a new trial. I favor reversal and a new trial.

All concurred.

Decree reversed upon the law and facts, with costs to abide the final award of costs, and the matter remitted to the surrogate for further consideration, as per opinion.