In 'the Matter of the Application. of MARY E. SHERMAN for an Accounting of and the Removal of WILLARD LESTER, as Trustee under the Last Will and Testament of BENJAMIN C. SCRIBNER, Deceased.

WILLARD LESTER, Individually and as Trustee, etc., Appellant; MARY E. SHERMAN and Others, Respondents.

Fourth Department, October 1, 1919.

Trust — proceeding for accounting and to remove testamentary trustee — res adjudicata — former decision of Appellate Division — finding of surrogate not authorized by additional evidence — when substituted trustee not chargeable with face value of securities — proof of loss.

Where in a proceeding for a final accounting by and removal of a substituted testamentary trustee the Appellate Division has determined that a finding by the surrogate that the trustee was chargeable with the value of a mortgage on hotel property, which included the good will of the business, as the same was determined on the judicial accounting of his predecessor, was erroneous and that the trustee could not be charged with a loss on such investment by continuing to allow the mortgagor to operate the hotel property at a loss, without adequate proof as to the value of said security at the time it was charged to the trustee so as to fix the resulting loss, the surrogate on a new trial of the issue on which no additional evidence was given should not have rendered a decree reaching substantially the same final result, for he fell into the error made on the former trial of charging the trustee with the face value of the securities at the time he received them without any proof of their real value. Hence, the second decree of the surrogate should be reversed and a new trial ordered.

Moreover, the surrogate had no authority to charge the face value of the securities to the trustee on his first default in the collection of interest, there being nothing to justify a finding of a conspiracy or design to wreck the estate.

APPEAL by Willard Lester, individually and as trustee, from a decree of the Surrogate's Court of the county of Albany, entered in the office of said Surrogate's Court on the 30th day of December, 1918, surcharging the accounts of the trustee and removing him.

The appeal was transferred from the Third Department to the Fourth Department. (See 187 App. Div. 965.)

*Edgar T. Brackett* and *James W. Lester*, for the appellant.

*Benjamin K. Walbridge* and *Frederick E. Wadhams*, for the respondents.

LAMBERT, J.:

This proceeding is instituted by a life annuitant for a final accounting by and removal of a substituted trustee under the will of Benjamin C. Scribner, deceased. The will was probated in 1880. Letters of administration, with the will annexed, were issued to one Taber B. Reynolds, who soon thereafter, by judgment of the Supreme Court, was appointed trustee under the will. Reynolds served as trustee until January, 1896.

Before the trust was fully administered he brought an action in the Supreme Court for a final accounting and discharge as trustee. The action proceeded to judgment in January, 1896, adjusting his accounts and permitting his resignation. The judgment determined the trust estate to then consist of securities, $49,840.50; cash, $6,130.41; totalling, $55,970.91, and made certain allowances which brought the estate down to $55,078.04.

The appellant Lester was then appointed substitute trustee and the trust estate, as so constituted, passed to him. He, as trustee, has not heretofore made any accounting of his trust duties. In compliance with the order to show cause, issued in this proceeding, he filed an account of his administration of the trust. The same was surcharged, and the issues thus made were tried before the surrogate of Albany county, resulting in the decree surcharging his account about $49,000. That result proceeded upon two theories: *First*, that by accepting the trust estate as fixed by the judgment of 1896, without investigation as to the then value of the securities, the trustee was negligent and must be held liable for the face value of the

investments turned over to him, plus uncollected interest; *second,* that in the subsequent handling of the estate, the trustee was guilty of negligence, bad faith and malfeasance. The decree specifically directed and adjudged that the title to the principal securities reported by the 'trustee as assets of the trust estate, and for which he sought credit, should be vested in him personally, segregated and impounded for the benefit of the trust estate and that he be charged with the face value thereof, plus uncollected interest. In this provision of the decree were included securities representing. investments made by his predecessor, as well as investments made by him in the course of administration of the trust estate. The appellant was also charged by the decree with losses in administration, depreciation in values of property and denied commissions and attorneys' fees and was personally charged with costs of the proceeding.

The bulk of the trust estate upon the accounting was represented by securities turned over to the trustee under the judgment of 1896. The principal one consisted of a $20,000 mortgage, reduced by payments to $15,000, on a summer hotel property known in the record as the "Way Side Inn Hotel." The findings of the surrogate described it as a large wood structure, used for summer hotel business, located at a place called Luzerne, Warren county, and "that an important part of the value of said property consisted in the good will of the hotel business." The owner of the equity of redemption, who was the mortgagor and maker of the bond accompanying the mortgage, was a widow, well advanced in years and insolvent. She had operated· the hotel for several years. At the close of business in November, 1897, because of losses in operation and need of money to pay debts and make repairs, she threatened to abandon the property. In this situation, for the purpose of inducing his trust debtor to continue in the operation of the hotel, the appellant made an additional trust loan of $5,000, taking as security a second mortgage upon the hotel property and a first mortgage lien upon properties owned by the mortgagor adjacent to and serviceable in the conduct of the property as a hotel business. This arrangement was carried out. At the end of the succeeding year, a substantial loss resulting from the operation of the hotel,

determined Mrs. Butler, the trust debtor, to surrender the real estate, covered by the mortgages mentioned, to the trustee.

In this crisis the trustee arranged with his brother, who was the owner of the personal property equipment of the hotel, to operate it for the next five successive years on a percentage basis of profits to the trustee. This arrangement resulted in a financial loss. Thereafter and in the year 1903 to the time of the accounting, this hotel property was leased under varying conditions, with a loss in operation to the operator. During this period no interest was paid upon the trust mortgages, which, at the time of the trial, had reached the alarming sum of around $17,000. This, in a general way, presents the history of the Way Side Inn mortgage indebtedness and the treatment it received by the trustee, and as embodied in findings made with much amplification by the surrogate. There was made the additional finding of fact that the loan of $5,000 upon the hotel property, and the trustee's consent given to the operation of the hotel business entailing yearly loss of interest upon the trust securities, was made in bad faith and for the purpose of enhancing the personal and moneyed interest of the Lester family. Upon this premise of facts considered in their relation to specific findings of neglect, bad faith and malfeasance, the surrogate determined that the trustee should be charged with the face value of the mortgages, plus the uncollected interest thereon and provided for the substitution of cash for the securities as assets of the estate.

The trustee took an appeal from the decree entered to the Appellate Division of the Third Department. (*Matter of Sherman,* 180 App. Div. 196.)

The decision of the Appellate Division is evidenced in an opinion. It was there decided that the determination of the surrogate that the appellant trustee should be charged with negligence in accepting the securities under the judgment of 1896 was erroneous. This, because he had no part in their creation and owed no duty in respect thereto, except to administer the same in good faith and with such care as the attending circumstances would commend to a prudent person. It was further suggested in the decision rendered that inasmuch as the value of these securities was uncertain, and depended upon the operation of the hotel business to

preserve the " good will," the principal element of value of the securities, the trustee was justified in making an honest effort to operate or have operated the said hotel business for at least some period of time. The court did not go to the extent of deciding that the operation of this hotel from 1898 to the time of filing the account was legally justifiable in view of the attending yearly loss. That was left as an open question of fact to be determined upon a new trial, which was ordered. It was, however, distinctly decided that in no event should the trustee be charged with the face value of the securities except upon adequate proof that such was their value at the time they were charged to him.

The rule of liability follows as a necessary sequence because, as stated in the opinion of the Appellate Division, that at the time these securities came to the trustee they were of doubtful and uncertain value, and he owed only the duty thereto of exercising reasonable judgment and good faith in the administration and collection of the same. If a loss was sustained to the estate, such as might make the trustee chargeable with their value at sometime during his administration of the trust, then proof should have been given respecting the value, for the purpose of fixing the loss resulting. In this connection the court suggested that there was neither such a finding nor evidence upon which to base it in the record, and for that and other reasons a new trial of the proceeding was ordered. It has been had. No additional evidence was given. By stipulation, the record made on the first trial was read in evidence. The surrogate has again made findings and decree, reaching substantially the same financial result. He eliminated the finding of negligence in the acceptance of the securities under the judgment of 1896, but has again found, specifically, bad faith and malfeasance by the trustee in handling the trust estate. He has again fallen into the error made on the former trial, of charging the trustee, appellant, with the face value of the securities at the time or soon after he received them, in the absence of any proof of their value. The Appellate Division on the former appeal pointed out in its opinion that there was neither a finding nor evidence justifying a finding of the value of the Way Side Inn Hotel property, and that such was indispensable to show

the loss sustained by the estate through the mismanagement and want of care upon the part of the trustee. This is the rule that the court suggested should be applied to the legal redress granted by the surrogate. It questioned the premises adopted by the surrogate to which was applied the drastic remedy of compelling the trustee to substitute cash for the trust securities. It appeared then as now, that the surrogate charged the face value of these securities to the trustee, on the first default in the collection of interest. This surely cannot be sustained as a just rule of liability, even in a trust accounting, except upon justified findings of a conspiracy or design to wreck the estate. There is nothing in the record that has been called to our attention, or that we can find, that justifies such a conclusion of fact. At the due date of the first uncollected interest, the record shows the trustee was struggling with the question of how to keep the hotel in operation to preserve its market value. As suggested by the opinion of the court, it was his duty to exercise his best judgment in the management of the property for the benefit of the estate, and if he did so, and acted in good faith, he will be protected against loss to the estate. Whether or not he was justified in continuing his effort to operate this hotel, in the face of successive yearly losses of interest upon the investment is a question that has not yet been passed upon, as stated above. The observations made with reference to the Way Side Inn security have more or less application to the remaining securities coming to the possession and care of the trustee from his predecessor.

For this reason it is not deemed essential that they be more specifically considered at this time. The decree should be reversed and a new trial ordered, with costs to appellant to abide the final award of costs.

All concurred.

Decree reversed and new trial granted, with costs to the appellant to abide the final award of costs. Findings of fact numbered 9 and 40 are disapproved and reversed, and the court further holds and decides that as to the securities which came into the hands of the trustee under the judgment appointing him trustee, there is no satisfactory evidence to show their value and the amount with which the trustee is legally chargeable.