J. K. FERRE v. THE AMERICAN BOARD OF COMMISSIONERS FOR FOREIGN MISSIONS.

*Will. Trust. A Strict Power. One of two Executors cannot Execute. A Deed given by one Executor void.*

A will contained the following clause : "I give and bequeath to my beloved wife .
. . . all my personal property, to be at her disposal, and also all my real property, the use of it during her natural life ; provided, nevertheless, if the personal property and the use of the real, be not sufficient for her and the support of my well-beloved mother during their natural lives, in such case I order my executors to sell so much of the land as may be necessary for their support while in this life, and after both are deceased, what may be left of my real property I give and bequeath to the American Foreign Missionary Society"; and the wife and testator's brother were appointed executors. After the decease of her co-executor the executrix deeded the real estate to the orator ; the consideration of which deed was, mainly, past and future support. *Held,*

1.  That the deed so executed by *one of two executors was void; and that such a power,* when so given to two or more, *does not survive, and cannot be executed by the survivor, in his own behalf, or interest.*

2.  By the devise a *life estate* in the farm passed to the widow, and the reversion to the defendant, subject to be defeated, in whole, or in part, by the execution of the power, on the happening of the contingency named. But it is a *strict* rather than a *directory power;* one to be executed *only under the exact circumstances and manner prescribed in the will.*

3.  The testator conferred more than a *mere power* upon the executors ; yet it was only a *naked power; a power coupled with a trust, or that implies a trust.*

4.  When one is unable or unwilling to execute the power given him, courts of equity will execute it ; hence, the orator, having furnished the support on the understanding that he *should be paid out of the property,* is entitled to be *subrogated* to the rights of the widow, and have the court exercise the power in that behalf.

5.  *No debts paid for the widow* are a charge upon the real estate ; *only the difference between the rent of the real estate and the cost of supporting.*

6.  In this case the improvements made are not a charge upon the trust ; as some were paid for out of the trust property ; and some were not greater than a tenant ought to make.

THIS cause was heard on the master's report, the exceptions thereto, the bill, answer and traverse at the December Term, 1878. PIERPOINT, Chancellor, made the following decretal order:

On hearing, it is *pro forma* ordered that the exceptions filed by the defendant to the master's report in this cause, be dismissed for insufficiency ; and that said report be accepted and confirmed. It is adjudged that there is now due to the orator upon the matters mentioned in said report, (including interest to this date), the sum of                    ; and it is ordered and decreed by said court that the orator recover of the defendant his legal costs in this cause, as a legal debt and claim against the said defendant, the payment of which may be enforced by proper process. And further, that unless the said defendant, the American Board of Commissioners for Foreign Missions, pay, or cause to be paid, to the clerk of this court for the use and benefit of the orator, the said sum of                    together with the amount of the orator's costs aforesaid, with interest on said sum, from this date, on or before the first day of March, 1878, the said defendant, and all persons claiming by, from or under it, shall be bound and forever foreclosed of and from all right, title, interest or claim to or in the premises described in the orator's bill ; and the said defendant and its attorneys, solicitors and agents shall be perpetually restrained from setting up any claim upon a judgment recovered in the Supreme Court for the County of Addison rendered at the January Term, 18—, in an action of ejectment brought by the said defendant against the orator.

The facts are sufficiently stated in the opinion of the court.

*John W. Stewart, E. R. Hard* and *W. L. Burnap,* for the orator.

The power to convey was not extinguished by the death of James Stickles, one of the executors ; but on his death it vested in Mrs. Stickles alone. Gen. Sts. 387, s. 14. So, independently of the statute. Treating the authority (or rather the *order*) to convey, as a *mere naked power,* it having been given to the *executors, eo nominee,* would survive. 2 Perry Trusts, ss. 493, 499, 502 ; 2 Story Eq. Jur. s. 1061, and n.; 2 Wash. R. P. 614, 615, (top-

paging); 4 Greenl. Cruise, 199, 200, n ; *Howell* v. *Barnes*, Cro. Car. 382 ; *Davis* v. *Christian*, 15 Gratt. (Va.) 11 ; *Wells* v. *Lewis*, 4 Met. (Ky.) 269 ; *Jackson* v. *Ferris*, 15 Johns. 346 ; *Peter* v. *Beverly*, 10 Pet. 557, (12 Curt. 234.)

It was not a naked power merely, but was coupled with both an *interest* and a *trust*, either of which would prevent its failure by the death of one of the donees. 2 Story Eq. Jur. ss. 1061, 1062 ; 2 Wash. R. P. 614 ; 4 Kent, 344 ; *Osgood* v. *Franklin*, 2 1 Johns. Ch. 21 ; *Franklin* v. *Osgood*, 14 Johns. 527, 553.

An *interest* sufficient to feed a power and keep it alive in the hands of the surviving executor, need not be a *legal* interest—an equitable one is sufficient ; nor does the efficacy of the interest depend upon *its quantity*. *Osgood* v. *Franklin, supra.*

The life estate of Mrs. Stickles in the land, and her right to have the proceeds of a sale applied to her support, were either of them, a sufficient *interest* to sustain her power to convey. *Osgood* v. *Franklin, supra ; Peter* v. *Beverly, supra ; Jackson* v. *Ferris, supra ; Jackson* v. *Given*, 16 Johns. 167, 171 ; *Jackson* v. *Burtis*, 14 Johns. 391, 398.

The duty charged by the will upon the executors was a *trust*, imperative. *Osgood* v. *Franklin, supra ; Zebach* v. *Smith*, 3 Binn. 69, (14 Johns. 553); *Shippen's Heirs* v. *Clapp*, 29 Penn. St. 265 ; Perry Trusts, ss. 248, 473. If the whole will evinces a design in the testator that, at all events, the land should be sold to satisfy the whole intent of the will, then the power survived. *Franklin* v. *Osgood, supra.* For determining the effect and construction of such powers as the one in question, we must ascertain and give effect to the *intention of the creator of the power, as gathered from the entire instrument*. Perry Trusts, ss. 499, 475 ; Lewin Trusts, 444 ; 4 Greenl. Cruise, 199, n.; *Peter* v. *Beverly, supra ; Osgood* v. *Franklin, supra.* Did the testator intend that the whole beneficent object of the will should be defeated ? 14 Johns. 555.

It was not necessary even at law that the deed to the orator should contain a recital of the words of the will creating the power, nor of the fact that the contingency had occurred upon which a conveyance was ordered. It is enough if it appears—as

it abundantly does—that the deed was intended as an execution of the power. 4 Kent, 554 ; 2 Story Eq. Jur. s. 1052, a. and n.; 2 Wash. R. P. 612, 618 ; *Solomon* v. *Wilcox*, 27 Conn. 520 ; *Carr* v. *Verner*, 66 Pa. St. 326 ; *Blogge* v. *Miles*, 1 Story, 426.

*E. J. Phelps*, *L. L. Lawrence* and *J. H. Lucia*, for the defendant.

The power given in the will to the executors to sell the real estate, is a mere naked power. It is not coupled with, or dependant upon, any interest at all. It stands as to the power, precisely as it would if the intermediate life estate was in a third person. The executrix, in her individual capacity as widow, has the life estate, which is entirely independent of the power given the executors, and would be the same if the power to sell was given to a third person, or not given at all. *Learned* v. *Bridge*, 17 Pick. 341 ; *Shelton* v. *Homer et al.*, 5 Met. 466 ; *Lancaster* v. *Thornton*, 1 Burrows, 366 ; *Stevens* v. *Winship*, 1 Pick. 325.

A naked power does not survive. If given to two it must be executed by the two, and not by the survivor of them. In *Franklin* v. *Osgood*, 14 Johns. 553, Judge PLATT says: *It is clear, that at common law, a naked power given to executors to sell lands, would not survive.* a. This power to sell was a personal confidence reposed in the joint discretion and integrity of the two executors. "All the authorities agree," (says Judge WILD, in *Taintor* v. *Clark*, 13 Met. 226,) " that if a power is given, indicating personal confidence, it must be confined to the individual, or individuals, to whom it is given, and will not, except by express words, pass to others than the trustees originally named, though they may, by legal transmission, sustain the same character." And to the same effect are the following cases : *Cole* v. *Wade*, 16 Vesey, 43 ; *Conklin* v. *Egerton, Admr.*, 21 Wend. 437 ; *Shelton* v. *Homer. et al.*, 5 Met. 466.

The general principle of the common law, as laid down by Lord COKE, is, that when the power, given to several persons, is a mere naked power to sell, not coupled with an interest, it must be executed by all, and does not survive. *Peter* v. *Beverly*, 10 Peters, 564 ; *Jackson* v. *Schouler*, 7 Cow. 197. The trustee can-

not act in his own case, as between himself and the subject of the trust. Nor can the act of such a party in his own behalf be set up by proof of its actual fairness and correctness. That is an inquiry that cannot be gone into. The act is wholly void. Adams' Equity, 366–370 ; *Shelton* v. *Homer et al., supra ; Michoud* v. *Girod,* 4 How. 503.

The executrix, then, had no power whatever to execute the deed in question. The language of the court in *Tollet* v. *Tollet,* 2 P. Williams, 490, is explicit upon this point. " This court will not help the non-execution of a power, which is left to the free will and election of a party whether to execute or not, for which reason equity will not say he shall execute it, or do that for him which he does not think fit to do himself." Indeed, a court of equity by acting otherwise, in case of a non-execution of a power, would deprive the party of all discretion respecting the exercise of it, and defeat the intention of the party in the creation of the power. 1 Story, 174, ss. 169, 170 ; *Holmes* v. *Coghill,* 12 Ves. 214 ; *Brown* v. *Higgs,* 8 Ves. 569 ; *Crossling* v. *Crossling,* 2 Cox, 396 ; *Larned* v. *Bridge,* 17 Pick. 342.

While equity will generally aid the defective execution of a power, yet where the defect is one of substance, " such as the want of co-operation of all the proper parties in the act," then equity will not aid the defect. 1 Story, 170, s. 175 ; 2 Chance on Powers, c. 23, s. 2, pp. 540, 543 ; Adam's Equity, 227. Nor will equity aid a defective power. *Piatt* v. *McCullough,* 1 McLean, 82 ; 1 Story, 169, 174.

The opinion of the court was delivered by

Ross, J. A brief statement of the facts, and a history of the case, will aid in understanding the application of the legal principles governing the decision. The main questions arise on the following clause in the will of Peter Stickles, and what has been done thereunder :

"I give and bequeath to my beloved wife, Miriam Stickles, after all my just debts are paid, all my personal property to be at her disposal, and also all my real property, the use of it during her natural life; provided, nevertheless, if the personal property, and the use of the real, be not sufficient for her and the support of my well-beloved mother, during

their natural lives, in such case I order my executors to sell so much of the land as may be necessary for their support while in this life, and after both are deceased, what may be left of my real property I give and bequeath to the American Foreign Missionary Society, to be disposed of for the promotion of the Redeemer's Kingdom, in that way and manner as the Board of Commissioners of that Society shall think best."

The testator appointed his brother James Stickles and his wife, Miriam Stickles, executors of his will; and desired that they should inform " the Treasurer of that Society of my bequest." The will was made Dec. 5, 1826. Peter Stickles died July 12, 1831; and his will was probated August 18, 1831; and the executors duly qualified. The mother died before the testaator. The widow, Miriam Stickles, accepted the provisions of the will in lieu of dower, and the provisions of the law in her behalf. She received about $325 of personal estate, after paying the debts due from the estate. She went into possession of the farm, and continued to carry it on until July 10, 1840, when she went to live with the orator and his father, Luther Ferre, who was her brother. She then had personal property, which the master has found was of the value of $129. She had contracted some debts by signing as surety, in regard to which litigation arose, so that the cost and debts amounted in 1843 to $259. On July 10, 1840, she entered in a contract with the orator and his father by which she was to give them a quit-claim deed of the farm, and her personal property ; and they agreed to pay her debts and support her through life. The deed was not executed until Dec. 24, 1840. The transaction was had and conducted between Miriam Stickles and Luther Ferre. All which the orator knew about, being consulted by his father. The orator now claims that he understood that her quit-claim deed of the farm conveyed the fee; and not simply her life estate therein. He admits, that he learned within a year or two thereafter, that it conveyed only her life estate therein. The farm at this time was considerably run down from bad husbandry. The orator and his father took possession of the farm, and improved it considerably from time to time. The rental value of the farm when taken possession of by the orator and his father, the master has found, was $70 per annum ; and that it continued the same for several years

thereafter.   Mrs. Stickles was a pleasant old lady ; not strong, nor robust, but industrious, and able to be about, and care for herself, and without any particular sickness, until her last sickness, which was of short duration.   She died June 27, 1863, having attained the age of eighty-nine years.   The orator swears that he took possession of the farm and other property under the deed of Dec. 24, 1840, and continued to hold possession thereof under that contract and agreement until Aug. 31, 1857.   In the summer of 1841, the orator asked James Stickles, the co-executor, to sign the deed, or a deed of the farm ; and he declined to have anything to do with it.   James Stickles lived until Dec. 18, 1850.   August 31, 1857, the orator and Miriam Stickles, then eighty-three years old, had what is called a settlement ; in which he charged her $110 per year for her support, amounting to $1,870 ; $259 debts and costs paid ; $128.87 taxes paid ; $633.01 interest ; and credited her $70 per year for the use of the farm, amounting to $1,230 ; and nothing for the personal property received ; and thus found a balance in his favor for $1,660.88 ; for which she gave him her note. March 31, 1858, Miriam Stickles attempted to convey to the orator by her deed as executrix, the farm, in which she recites : " Whereas the said Peter Stickles, in order to enable his said executrix fully to carry into effect his intentions, did, in and by his last will and testament, authorize and empower his said executrix in any manner which she should think proper to make sale of, and deliver deeds to convey all his the said testator's real estate ; now therefore, know ye, that by virtue and authority to me given by the said Peter Stickles, in his last will and testament, I the said Miriam Stickles, executrix as aforesaid," &c.   In the deed she covenants that she is executrix ; and that she had in all respects acted, in making the conveyance, in pursuance of the authority granted to her, " in and by the last will and testament of the said Peter Stickles."   Thus matters stood at the time of her death, June 27, 1863. · In 1864, the defendant brought an action of ejectment to recover possession of the farm.   The orator defended under the deed of March 31, 1858.   The County Court held that the deed was insufficient for that purpose, and rendered judgment for the plaintiff.   That judgment after two arguments

was affirmed in this court ; but no opinion was written in the case. Thereupon, this bill was brought, in which the suit at law was enjoined ; and the orator claims that the deed of March 31, 1858, was, in equity, a valid execution of the power created by the will of Peter Stickles ; and that his title to the premises derived therefrom should be established and confirmed ; or at least, that his expenditures for the support of Miriam Stickles, for money paid for her benefit, and for improvements on the premises, should be charged upon the premises, and adjudged to constitute a valid lien thereon ; and prays that an account thereof may be taken. On appeal, this court, after full argument, ordered the account to be taken ; and the case now comes up again on appeal for final disposition, on the pleadings, evidence, master's report and exceptions thereto. In stating the account, the master has reported a considerably larger sum due the orator than was claimed by him on the basis of the so-called settlement of Aug. 31, 1857 ; and adding thereto his own price, $5 per week, for the support of Miriam Stickles subsequently to that date. This resulted, without doubt, largely from the master's averaging the price of her support, per week, for the whole time, and thus having allowed, for the earlier years, more than the orator charged, as the master found that her support was worth, which, with interest added for nearly forty years, operated to swell the allowance beyond what the master probably intended. That such was the result of his allowances would not come to the notice of the master without a long and careful computation on each basis. The Court of Chancery, *pro forma*, accepted the report ; decreed the balance a charge upon the premises ; and rendered a personal judgment against the defendant for the costs of suit. On this statement several questions arise, in regard to the kind and nature of the power conferred by the testator upon his executors ; whether the same survived to, and could be executed by, Miriam Stickles, in favor of herself ; whether the deed of March 31, 1858, was a valid execution of the power ; and if not, whether the power was *imperative*, or implied a trust, and of such a nature that the Court of Chancery will now execute it in favor of the orator ; and if so, to what extent ? Questions, involving powers,

and their execution, as well as when a court of equity will or will not execute them, or aid in their execution, are often intricate and perplexing. It would be utterly impossible to reconcile all the decisions and adjust them to exact rules. Generally, it may be said that the intention of the testator or settlor has a controlling influence in determining the kind or nature of the power. Perry, in his work on Trusts, s. 248, distributes "powers into *mere powers;* and *powers coupled with a trust,* or *which imply a trust."* "*Mere powers* are purely discretionary with the donee; he may or may not exercise or execute them at his sole will and pleasure; and no court can compel or control his discretion, or exercise it, in his stead and place, if for any reason he leaves the powers unexecuted. If the donee executes the powers, but executes them in a defective manner, courts may aid the execution and supply the defects; but they cannot exercise or execute mere naked powers conferred upon a donee." Such are the powers conferred when the donees are authorized or directed to do a certain act, or to abstain from it, "if they think fit," or "proper," or "at their discretion." Perry on Trusts, s. 507. The power of sale conferred by the testator on his executors, James and Miriam Stickles, was more than a *mere power.* No reasonable mind can contemplate the language of the will, and the surroundings of the testator, being without children, and leaving only his widow to be provided for, and not become convinced that he intended, by conferring the power, to provide her a reasonable support, if the property should prove sufficient; not dependent upon the caprice, or mere discretion of the donees. Suppose Miriam Stickles had been stricken down with a painful, lingering disease, so that she required constant attendance of a nurse, and frequent medical attendance, to meet the expense of which the income from the farm was wholly inadequate, and while in this condition, and unprovided for, she had called upon James Stickles to join her in the execution of the power, and sell so much of the farm as would raise money enough to supply her actual necessities, can there be any doubt but he would, by the language of the will, be under an *imperative duty* to exercise the power, a duty which he could not disregard in his discretion? The language of the tes-

tator is, " in such case I *order* my executors to sell so much of the land as may be necessary for their support while in this. life." I think it may safely be held that the testator conferred more than a *mere power* upon his executors.   Yet it was but a naked power. No estate or property was conveyed therewith.   In *Stevens et ux.* v. *Winship*, 1 Pick. 317, the testator devised a messuage to his wife for life, and the reversion to his brothers and sister, and gave his wife full power, " in case she shall stand in need, to sell all his estate real and personal for her comfortable support " ; and appointed her executrix.   It was held that she took a life estate, with power to sell depending upon a contingency ; and those claiming under a sale by her must show that the power was well executed on the actual happening of the contingency.   In *Learned* v. *Bridge*, 17 Pick, 339, a testator devised to his wife " the use and benefit of all his estate real and personal, and should the income prove insufficient for her comfortable support, she to dispose of so much thereof as shall be sufficient for that purpose " ; and that the remainder be equally divided among his children. He appointed her executrix.   Held, Chief Justice SHAW giving the opinion, that she took an estate for life only, with a naked power depending upon a contingency ; that the happening of the contingency was a condition precedent to the due execution of the power, and that the power must be executed by the wife alone in her lifetime ; that the power did not attach to her in her office of executrix, and so did not pass to the administrator *cum testamento annexo* in favor of a creditor who supplied her necessities on the happening of the contingency provided for by the testator for the execution of the power.   These cases in some respects are analogous to the case at bar, and serve to illustrate the kind of power that is donated in such cases.   The last case serves to illustrate that it is not a power donated to his executors, *virtute officii* as in *Jackson* v. *Ferris*, 15 Johns. 345 ; or *actione officii* as in *Davis* v. *Christian et al.*, 15 Grattan, 11 ; or annexed to the office of executrix, as better expressed by Mr. Perry, s. 493.   Such power survives, and passes to the administrator, *cum testamento annexo*, because necessary for the due administration of the estate or execution of the will.   By the devise a life estate in the farm passed

to the widow and the reversion to the defendant, subject to be defeated, in whole, or in part, by the execution of the power on the happening of the contingency named. The exercise of the power was not at all necessary for closing the settlement of the estate of the testator. The power would serve all the purposes intended by the testator, as effectually, if conferred upon others, as when conferred upon the executors. Its exercise by such others would, in no way, hinder the executors·in the discharge of their duties as such, nor in the settlement of the estate of the testator. Its exercise could only affect the defendant by lessening its reversionary interest in the farm, or by defeating it entirely. For a full and forcible presentation of the doctrine of a power annexed to the office of executors, see the opinion of Judge COWEN in *Conklin* v. *Egerton's Admr.*, 21 Wend. 430. If the power had been exercised by the executors, in its exercise they would have acted as the attorneys of the testator, made such by the will, and not in their capacity of executors.

Neither is it a power coupled with an interest, in the ordinary acceptation of that phrase. While Miriam Stickles might have a contingent interest in having the power exercised, she had no certain interest in its exercise, and James Stickles had no interest whatever in its exercise. It is a *strict* rather than a *directory* power; one to be executed only under the exact circumstances prescribed in the will; and in the exact manner; and for the particular person therein named. Perry on Trusts, s. 490. The cases generally hold that such a power, when given to two or more, although named as executors, if not annexed to the office of executors does not survive and cannot be executed by the survivor of them. Perry on Trusts, s. 499. But whether the powers in this case would have survived to Miriam Stickles, in the event she had not been interested in its execution, it is not very material to determine. It is well established, that a " power cannot be executed in the favor of the donee of the power, or of his family, unless the instrument specially authorized him so to do. The donee of a power cannot execute it for any pecuniary gain directly or indirectly to himself. Nor can he exercise it for any other purpose personal to himself." Perry on Trusts, s. 254 ; and

511 a, and cases cited. The will authorized the two to execute the power on the happening of the contingency named ; but does not authorize Miriam Stickles, if she should happen to survive James, to execute it in her own behalf. Hence, this court when the ejectment case was under consideration, aside from the peculiar circumstances under which Miriam undertook to exercise the power, correctly held that the deed of March 31, 1858, conveyed no title to the orator. The exercise and execution of the power must be in accordance with the intent and purpose of the power. A strict power must be exercised and executed within the limitations prescribed by the testator ; and it may be questioned whether its attempted exercise by Miriam, if it survived to her, would have been a good execution thereof. The power contemplates a sale of so much of the land only, as would meet the then existing, and probable requirements of furnishing her a support. Whether it authorized a sale of the whole farm, on the expectation that she was then to survive several years, so as to require all the avails of such sale, is, at least doubtful. Courts of equity always take special care that future estates or interests shall not be destroyed by the present user of the property. Perry on Trusts, s. 378. The orator is not entitled to have the title to the farm established and confirmed in him by virtue of the deed of March 31, 1858. The question remaining for consideration is whether he has the right to have any of his claims charged upon the land. It is clear that what he paid out to discharge the debts which she had obligated herself to pay by signing as surety, and the costs incurred in defending suits thereon, cannot be made such a charge. This claim does not come within the scope of the purpose for which the testator created the power ; that of furnishing his widow with a comfortable support. As we have attempted to show, this power falls within the second class of powers mentioned by Mr. Perry ; "*powers coupled with a trust, or powers which imply a trust.*" Of this class of powers he says, s. 248, " In this class of cases the power is so given that it is considered a trust for the benefit of other parties, and when the form of the gift is such that it can be construed to be a *trust*, the power becomes *imperative* and must be executed." s. 249, " In all cases

when parties have an *imperative power or discretion* given to them, and they die in the testator's lifetime, or decline the trust or office, or disagree as to the execution of it, or do not execute it before their death, or from any other circumstance, the exercise of the power by the party intrusted with it becomes impossible, the court will imply a trust, and will put itself in the place of the trustee, and will exercise the power by the most equitable rule." Again in s. 473, speaking of powers in the nature of a trust, he says: "These latter powers are sometimes coupled with an interest, and sometimes not. But if they are in the nature of a trust, they are imperative on the trustees, and must be executed. If the trustees neglect or refuse to execute them, or die without performing them, courts of equity will execute them or compel them to be executed." The two donees of the power never improperly refused to execute it. When the orator called upon James Stickles in 1841, to sign the quit-claim deed, or to make a deed of the whole farm, to him for the support of Miriam Stickles, he properly refused so to do. No such state of facts then existed, as would authorize the donees of the power to make such a conveyance. Miriam Stickles was in good health; and if the use of the farm was inadequate for her support, there was nothing to indicate that the sale of the entire farm would be required to furnish her such support; and the defendant's reversionary interest therein could not be destroyed upon a bare possibility that such a sale might be required, before the decease of Miriam Stickles. No other application was made by the orator to James Stickles in his lifetime, nor to Miriam Stickles until Aug. 31, 1857. On cross-examination the orator testified: "The deed marked A." (the deed of 1840) "was given me by Mrs. Stickles, the December after she came to live with me. The said deed was given to me to secure me her support. I was absent when the deed was given, but my name was put in by my father's request. Under said deed I took possession of the farm and the personal property named in the deed, and held possession of said farm by myself and tenants up to the settlement, as appears by the " paper marked B." (the settlement of Aug. 31, 1857) " At the time the deed was given in 1840, it was understood that I was to take care of her for her property."

He further testified that the settlement of August 31, 1857, and the deed of Mar. 31, 1858, were both made at the suggestion and request of Mrs. Stickles. Hence, from 1840, to August 31, 1857, the orator and his father were supporting Mrs. Stickles for what they received by the deed of 1840. Until the settlement of August 31, 1857, the contingency upon which the testator ordered his " executors to sell so much of the land as may be necessary for their support, while in this life " did not arise. While she could relinquish the orator from his agreement to support her during her natural life, so that at that time it might become necessary to exercise the power to furnish her support, she could not antedate the happening of the contingency, by acknowledging that her support to that time had been more than a fair equivalent for the property she had conveyed to the orator therefor. Hence, on the orator's own testimony, the earliest date at which the contingency, prescribed by the testator for the exercise of the power, happened, was August 31, 1857. It is therefore immaterial to inquire whether prior to that date, the rental value of the farm was fairly equal, or sufficient to furnish Miriam Stickles with a proper support. At that time she relinquished the orator from his former contract, and the rental value of the farm was insufficient to support her. That value was then $120 per annum as found by the master. She was eighty-three years old. The orator testifies that from that time onward it was worth $5 per week to support her, and the other testimony in the case and the finding of the master corroborate his testimony. The contingency prescribed by the testator for the exercise of the power had arisen. She could not exercise it in her own behalf. There was no person in being that could exercise it. On the principles already announced the Court of Chancery should exercise it in her behalf. The orator, having furnished the support from that time, found on the understanding with Mrs. Stickles that he should be paid therefor out of the property, is entitled to be subrogated to her right to have this court exercise the power in that behalf. The master's report, with this finding, as to the value of her support from that time onward, furnishes the necessary data for the accounting. The orator is to be allowed from August 31, 1857, to the death

of Miriam Stickles, June 27, 1863, $5 per week for her support; $58 funeral expenses as found by the master; and $60, war tax paid by the orator in the year 1863; and is to be charged with the rent of the farm at the rate of $120 per year, commencing as of April 1, 1858, the rent for the year 1857 having been reckoned into the settlement of August 31. On this basis of accounting, allowing the orator interest on the yearly balances to April 1, and applying the annual rents thereto as payments of those dates respectively, and the orator was indebted to the defendent April 1, 1878, $3,76; and if the accounting is brought to April 1, 1881, allowing simple interest on the rent as it falls due annually, the orator will be indebted to the defendant $385.03. Hence, there is no necessity, at the present time, for the Court of Chancery to charge the support on the land or to order a sale thereof agreeably to the power conferred by the will. The orator, however, on the payment of the last-named sum with interest after April 1, 1881, and rents accruing thereafter into court by such time as shall be limited by the Court of Chancery, and on surrendering the possession of the farm to the defendant, is entitled to have the suit at law perpetually enjoined. No permanent improvements were found by the master to have been made since August 31, 1857. He finds that the repairs on the house were paid for by the land damages and by the wood sold. The repairs on the fences, even if made since August 31, 1857, do not appear to have been greater than a tenant, in a tenancy of forty years duration, would be bound to make. As the orator has prevailed only in part, and inasmuch as on compliance with the order as to payment and surrender of possession of the premises, the suit at law will be perpetually enjoined so that no costs are recoverable therein, no costs are allowed to either party. The decree of the Court of Chancery is reversed and cause remanded, with a mandate for a decree as herein indicated.