In the Matter of the Estate of FREDERICK F. PROCTOR, Deceased.

Surrogate's Court, Westchester County, August 30, 1935.

*Mitchell, Taylor, Capron & Marsh,* for the petitioners.

*Mark C. Candee,* for Kathleen N. Candee, guardian of Georgena Cathline Hart.

*Victor McLean Day,* special guardian.

SLATER, S. This is an application for the instructions of the court and for a construction of the will, involving a most difficult problem arising out of the financial distress of the country. The trustees under the will are holding, as one of the main assets of the estate, a $4,000,000 mortgage made by the RKO-Proctor Corporation covering theatres located in various cities in New York and New Jersey.

The decedent died September 4, 1929, and his will was admitted to probate on September 23, 1929. The mortgage was made during the decedent's lifetime. He took it in the name of the F. F. Proctor

Holding Corporation, of which he owned all the common stock. The mortgage, according to its terms, was to be amortized as to principal, at the rate of $100,000 per year, and such payments are in arrears to the extent of $250,000 with the interest paid to date.

After the decedent's death, the RKO-Proctor Corporation took leases on two theatres for a period of years at a large rental. The land on which these theatres were built is owned by other corporations. The leases were made in 1930 and, of course, since that time business has declined to such an extent that a very large loss per annum has been taken on these two theatres. Consequently, amortization on the trust mortgage cannot be made.

Proof has been presented which establishes beyond doubt that an extreme emergency has arisen. The trustees are faced with the problem of what is proper to do. Are they to foreclose and take over the running of the ten theatres without capital behind them and without contact with the film corporations to show the pictures of interest to the public. In order to avoid this possibility the trustees must consider lightening the burden cast upon the mortgagor RKO-Proctor Corporation. The latter corporation has entered into various agreements with the lessors of the two theatres and a corporation affiliated with them, which are intended and expected to alleviate these difficulties. But the execution of these agreements is dependent upon the consent of the trustees thereto.

The proposed agreements have been submitted with this application. They require the consent of the trustees in only two essential respects: (1) The trustees are asked to extend the time of payment of the principal installments due upon the mortgage, and (2) the trustees are required to agree in writing that they will permit the mortgagor to make subleases of some of the theatres covered by the mortgage with the understanding that, in the event that they should be compelled hereafter to foreclose such mortgage, the lessees shall not be joined as parties defendant for the purpose of terminating or cutting off their interests in the leases so long as the lessees are not themselves in any respect in default.

Two main questions are thus presented for determination. The first is whether the will contains the power, express or implied, to permit the trustees to enter into the agreements (the necessity for which is apparent from the facts), and the second is whether the surrogate has the power to approve of the agreement.

One preliminary question must be answered before these are considered. The bulk of the decedent's estate originally consisted of the common stock of the F. F. Proctor Holding Corporation. That corporation has been dissolved by the consent of all of the stockholders and the trustees now hold the assets of the corporation

consisting in the main of the $4,000,000 bond and mortgage in lieu of such stock. It was the intendment of the testator to give the same powers to the trustees with respect to their control of the bond and mortgage as he had given them with respect to the stock of the F. F. Proctor Holding Corporation. This may be gathered from the language of the will. Thus, in article twenty-second, the testator directed that the residuary estate be devised to F. F. Proctor Holding Corporation outright, or as an alternative, that the residuary estate be paid to F. F. Proctor Holding Corporation in exchange for its stock and the stock distributed among the various trusts established by the will. Article eighteenth expresses the testator's awareness of and acquiescence in a liquidation of the stock of the corporation. Articles twenty-fifth and twenty-sixth likewise express the existence of such a thought in the testator's mind. Article twenty eighth empowered the executor to sell to F. F. Proctor Holding Corporation any of the stock which would come into its hands as such executor. Clearly this would be equivalent to a reduction of the assets of the corporation. Moreover, there is no reason for assuming that the testator intended that the assets of the corporation should be administered by controlling the stock of the corporation to the exclusion of any other method. The primary object is of course to manage and administer the assets themselves. Whatever the testator intended the trustees to do indirectly by their control of stock, he must have intended them to do directly by the control of the assets which the stock represented.

What then are the powers set forth in the will from which the trustees' authority to act under the circumstances at bar are to be deduced? Various trusts are established by articles tenth, eleventh, twelfth, fifteenth, sixteenth and seventeenth in which shares of stock of F. F. Proctor Holding Corporation were bequeathed to the trustees " in trust nevertheless for the following uses and purposes, that is to say: to hold, manage, invest and reinvest the same and to collect and receive the income, rents, issues and profits thereof * * * after paying therefrom all expenses incidental to the management of the trust estate, to pay or apply the net income, rents, issues and profits thereof to or for the use of " the particular beneficiary therein named.

It is clear that the will did not contemplate the situation which has actually arisen. The enumerated powers reflect little upon the question. Nevertheless, however lacking the will may be in the enumeration of explicit instructions, the power is clearly to be implied from the language of the will quoted above, authorizing the trustees to extend the time of payment of the installments of

principal now in arrears without the necessity of having to foreclose. This is a matter of discretion vested in trustees under a power to " hold, manage, invest and reinvest." (*McQuaide* v. *Perot*, 223 N. Y. 75; *Matter of Sherman*, 180 App. Div. 196.)

Does the will confer upon the trustees the power to subordinate the mortgage to the proposed lease to be entered into between RKO-Proctor Corporation and Fast Theatres, Inc., the prospective lessee? General legal considerations prompt an affirmative answer. The execution of such an agreement has become necessary to preserve the trust assets. No restriction is to be found on the method by which preservation is to be achieved. The nature and form of the remedy which seeks to preserve is incidental, and varies with the particular circumstances of each case. Here is made out a situation of urgency. It seems clear that the testator intended the trustees to have wide powers in connection with the administration of the trust. Any construction which extends the power of a will is more consistent with the testator's intention than one which would limit the powers therein conferred. (3 Bogert Trusts & Trustees [1935 ed.], § 582; Jessup & Redfield Surr. Ct. Prac. [3d ed. 1930], p. 1314; *Matter of Weissman*, 140 Misc. 360, 363.)

Powers may be implied to accomplish the settlor's intentions and purpose of the trust and to enable the trustee to perform his duties. The extent of such implied power is to be ascertained from the trust instrument and from all the circumstances, including the nature and condition of the trust property existing when it was made. (Bogert Trusts & Trustees [1935 ed.], § 784.) For cases dealing with implied powers, see *Corse* v. *Corse* (144 N. Y. 569); *City Bank Farmers Trust Co.* v. *Smith* (264 id. 396); *Weir* v. *Barker* (104 App. Div. 112); Real Prop. Law. (§ 106).

Even in the absence of authority in the trustees under the will to enter into the proposed agreements, the court would be constrained to approve them. The power of the court in relation to instructions to the trustees to enter into the specific agreements annexed to the petition is dependent upon its equity jurisdiction as established by section 40 of the Surrogate's Court Act. (*Matter of Raymond* v. *Davis*, 248 N. Y. 67; *Matter of Morris*, 134 Misc. 374; *Matter of Pulitzer*, 139 id. 575; *Matter of Enright*, 149 id. 353; *Matter of Winslow*, 151 id. 298; *Matter of Muller*, 155 id. 748.)

*Matter of Pulitzer* (*supra*) was an emergency case in which jurisdiction was found to exist in the surrogate to order a sale of certain stock held by the trustees because of the emergency. No power in the trustees to sell was provided in the will. In fact, one of its provisions was to the effect that the trustees should not sell that specific stock. The express provision of the will was disregarded.

(*Mertz* v. *Guaranty Trust Co.*, 247 N. Y. 137; 3 Bogert Trusts & Trustees [1935 ed.], § 561.) The power of the court to instruct trustees to disregard expressions of instruments establishing trusts is further commented upon by Professor Austin W. Scott in 44 Harvard Law Review, page 1025. Numerous cases in other jurisdictions hold that the court may order a sale in an emergency regardless of the power conferred by the will.

A case somewhat similar to the one at bar is *New Jersey Nat. Bk., etc., Co.* v. *Lincoln, etc., Co.* (105 N. J. Eq. 557, 563; 148 A. 713). In that case the trustee held mortgages as part of the corpus of the trust under a trust indenture providing that, if any of the mortgages pledged with the trustee were in default, different mortgages would have to be substituted, each or which should be worth at least sixty per cent of the actual sale or market price of the property described in the mortgage. If defaulted mortgages were not thus replaced, the trustee was obligated to take over the buildings covered thereby and operate them for the benefit of the bondholders. The obligor on the bonds, being unable to make such replacement, offered to supply instead participations in other mortgages held by it to the extent of sixty per cent of the appraised value of the property. In this emergency, the court was petitioned for advice, instructions and authority. The court said: " Nor is there any doubt as to the power of the court in the premises. It is of course quite true that *ordinarily* the trustee is bound, in the administration of the trust, by the terms of the trust, and that even this court has no right to authorize the trustee to depart therefrom; but it is also true that a court of equity, in its capacity as universal trustee, may in cases of emergency, for the preservation of the trust estate and the protection of the *cestuis*, authorize and direct the trustees to do acts which under the terms of the trust and under ordinary circumstances they would have no power to do. This power resides in the court of chancery as a part of its original inherent jurisdiction — its general administrative jurisdiction in cases of trusts."

Other cases are cited in the foregoing decision from other jurisdictions upholding the same principle. They are based upon the fundamental necessity for the preservation of the trust in order to fulfill the intentions of the testator which are in all cases that his named beneficiaries shall receive the income from the fund established for their benefit. Most of these cases, as indeed this case, involve the element of emergency. The majority of the decisions emanate from the Chancery Courts, and the Surrogate's Court, under section 40 of the Surrogate's Court Act as construed, has the equitable power with respect to decedents' estates equivalent to that of the Supreme Court or the Court of Chancery.

In my judgment, this court not only has the power and the right to make the order in question but unquestionably should do so for the safety and protection of the beneficiaries and remaindermen of the trust. It would be derelict in its duty if it failed to do so. The situation is unusual and must be dealt with without delay. The court, therefore, instructs the trustees that they are authorized under the will to enter into the proposed agreements and approves the same.

Submit order accordingly.