## In Re Wellman Estate

[127 A2d 279]

November Term, 1956.

Present: **Jeffords, C. J., Cleary, Adams, Hulburd and Holden, JJ.**

Opinion Filed November 23, 1956.

*Gannett & Oakes* for the beneficiaries.

*Fitts & Olson* and *Henry F. Black* for the trustee.

428

**Hulburd, J.** Having made the usual provision for payment of debts, funeral expense and the like, the testator, George A. Wellman, in a one-page will, provided as follows:

"SECOND:—All the rest, residue and remainder of my estate of whatsoever it may consist and wherever it may be, I give to my executor, hereinafter named, in trust and the use, interest and income *thre*from, I give to Loula Feller during her natural life and if the use, interest and income therefrom is not sufficient for her comfortable support and maintenance, then I give to her so much of the principal of said residue and remainder as, in the judgment of my trustee, is necessary for such comfortable support and maintenance.

THIRD:—At the decease of the said Loula Feller, I give, devise and bequeath said rest, residue and remainder, or so much thereof as may then remain, to my Sister, Florence M. Wellman and my Brother, Howard Wellman, in equal shares, to share and share alike, to them and their heirs forever.

FOURTH:—I hereby nominate, constitute and appoint the Vermont Peoples National Bank of said Brattleboro, to be the executor of this will.

IN WITNESS WHEREOF, I," etc.

By decree of the Marlboro Probate Court dated April 24, 1943, the Vermont-Peoples National Bank as executor of the estate of George A. Wellman was ordered to pay, transfer, assign and deliver to the Vermont-Peoples National Bank, as trustee, the remaining assets of the probate estate totalling $23,216.87.

The trustee set about administering the trust, providing for the widow as directed, making periodic accounts, and for the most part continuing to carry the same investments which were turned over to it although some of the securities consisting of shares of stock were sold during the administration of the trust prior to the death of the life-tenant, widow. The record discloses no objection by the beneficiaries on this account. Following the death of the widow on January 7, 1956, the trustee proceeded to get ready to close the trust and make distribution to the remaindermen entitled thereto. On Feb. 15

and 16, 1956, the trustee sold and converted to cash all the assets remaining in its hands. As a result of this sale, many of the securities brought far more than their original inventory value so that a profit of $44,286.99 was realized. On April 4, 1956, the trustee filed its account with the probate court showing in detail the capital gains derived from each individual stock and security. Due notice of a hearing as to whether the trustee's account should be allowed, was given by the probate court which meanwhile had received a petition from those claiming to be beneficiaries seeking an order of partial distribution,—without prejudice as to right of surcharge,—of the trust assets "to the beneficiaries entitled thereto as remaindermen" * * * "with sufficient reserves retained (by the trustee) to meet the expenses of winding up the trust estate." The beneficiaries incorporated into their petition allegations that the sale of the trust assets by the trustee was "without lawful authority" and as a result dividend income had ceased, further appreciation in the securities market lost, and substantial capital gains federal income taxes incurred; because of all this, the petitioners demanded that the trustee be surcharged for the losses arising from its mismanagement, as stated.

The beneficiaries in addition to this petition for a partial distribution, on April 21, 1956, filed their objections to the allowance of the trustee's account "for the reasons alleged in their Petition for Partial Distribution". The trustee filed an answer to the petition for partial distribution. One of its allegations was that "a majority of the persons claiming to be beneficiaries were advised of the various courses that could be followed by the trustee and of the tax problems and it was suggested that there be liquidation to cash, and said beneficiaries made no objection. It also alleged that its action was dictated by prudent management and "the exigencies of the situation". The trustee's account was filed at the same time as the trustee's answer to the petition for partial distribution. No hearing has yet been had on the petition and the probate court was unwilling to complete the hearing on the account until certain questions of law had been determined. Accordingly, the probate court made a *pro forma* order allowing the trustee's account, without full hearing on the merits, and overruled the objections

by the beneficiaries. In so doing the probate court expressly provided that pursuant to the provisions of V. S. 47, §2124, §2128 as amended, and §3086, in its discretion, it would pass the cause to Supreme Court before final judgment so that the questions of law raised by the beneficiaries might be determined and it gave the beneficiaries thirty days in which to file their bill of exceptions if they were so minded. The appellants made no application to the probate court pursuant to the statutes for appeal to the county court where a full hearing de novo might have been had on the merits. Instead they brought their case here by seasonably filing their bill of exceptions as suggested by the probate court. The bill of exceptions set forth the proceedings which had been had in probate court leading up to the hearing on the trustee's account which was had in part. Then, quoting from the bill of exceptions, "Thereafter the hearing was continued by order of court until May 16, 1956 on which date the court indicated it would not receive any further evidence until certain matters of law were determined by the Supreme Court regarding the rights of the Trustee to sell ·all trust assets following the death of life-beneficiary, under a will which is silent as to sale of trust assets by the Trustee or as to method of distribution by the Trustee, and without license, order or instructions from the Probate Court, whether or not any or all of the beneficiaries consented to such sale being considered by the Court to be immaterial." Thus it is clear from the foregoing that further hearing on the merits was contemplated by the probate court only after the legal questions raised here had been passed upon. In other words, the factual situation was to be further looked into by the court below in the light of such guiding rules of law as should be established by this Court.

The essence of the appellants' grievance is the act of the trustee in converting the securities, largely shares of stock, into cash preparatory to the termination of the trust, instead of making distribution by turning over to the beneficiaries personal property in kind. The continuance of a successful investment program had resulted in large potential gains being made on the various trust holdings. As soon as these capital gains were realized by sale, they became taxable under the

federal income tax laws. "These gains", say the beneficiaries, "would never have been incurred under the income tax law if the assets had been distributed in kind and held until death by the distributees."

The question before us is not whether the trustee acted prudently in what it did but rather whether it had the power to so act at all. The appellants' position is this: "Where the will is silent, a Trustee, upon termination of the life estate has no power to sell trust assets unless he has either [1] a license from or order of approval of the probate court or [2] the consent of the beneficiaries." We proceed to an examination of this proposition, the court below having ruled, in effect, that neither a license from the probate court nor consent of the beneficiaries is indispensible to the trustee's power to so act in the circumstances. Since the factual side of this case remains undeveloped and unresolved, we are confined on this appeal strictly to the legal question which the bill of exceptions has brought before us.

It is undoubtedly the general rule that where the trust instrument creating the trust confers on the trustee no power to sell trust property, he has no power to do so in the absence of authority given him by statute. See 54 Am Jur Trusts, §433, and note in 57 ALR at page 1118. It is equally true that a trustee must be deemed to possess or be able to exercise such powers as are specifically conferred on him or as are necessary or appropriate to carry out the purpose of the trust and are not forbidden by the terms of the trust. 90 CJS p. 217; Scott on Trusts [2nd Ed.] Vol. II, p. 1370; Restatement of the Law of Trusts, §186; See also *Sturges* v. *Knapp*, 31 Vt 1, 52 et seq.; *Ferre* v. *American Board of Com'rs*, 53 Vt. 162, 169 et seq.; *In re Est. of Boutwell*, 112 Vt. 159, 164, 22 A2d 157.

So too, it has been said "the nature of the trust and the property subject to it may give rise to an implication" of power to change trust investments. 54 Am Jur, Trusts, p.295; *Jones* v. *Atchison, T. & S. F. R. Co.*, 150 Mass, 304, 23 NE 43, 5 LRA 538. Whether any powers are to be implied, and what powers, must be gathered primarily from the instrument

432

creating the trust, and from the circumstances, including the nature and condition of the trust property existing when the trust was created. *In re Proctor's Will*, 157 Misc. 706, 284 NYS 675. Thus, where the trust assets consist of property of fluctuating and perhaps perishable value, such as corporate stocks, the trustee may dispose of such property when it is for the benefit of the trust. *First Nat. Bank* v. *Hawley*, 207 Ark 587, 182 SW2d 194; *In re Westerfield's Estate*, 193 Misc. 443, 82 NYS2d 766, Affirmed 303 NY 916, 105 NE2d 497. In fact, where the trustee finds among the securities coming into its hands that there are speculative assets, prompt liquidation *is required* of a fiduciary. *Matter of Hirsch*, 116 App Div 367, 101 NYS 893. Affirmed 188 NY 584, 81 NE 1165.

Here we have a case in which we have before us only the skeleton facts. The trust estate left by the testator consisted almost entirely of corporate stocks. As to whether they were speculative issues or otherwise does not appear. Whatever they were, they have virtually trebled in value since 1943.

■ When we look at the will of the testator it is indeed silent as to the trustee's right to sell trust property. An instrument creating a trust could hardly be more laconic. No authorization of any kind on the part of the trustee is mentioned; a bare statement of the trust is all. The trust does provide, however, that if the income derived from the principal should prove insufficient for the support of the widow, the trustee may resort to the principal for that purpose. It is apparent that the trustee by implication was intended to have a right to convert the assets to cash; otherwise it would be impotent to carry out the terms of the trust. In determining the powers of a testamentary trustee, the court must look at the will as a whole. *In re Gray's Estate*, 196 Wis 383, 220 NW 175; *In re Estate of Houghton*, 118 Vt 228, 232, 105 A2d 257.

■ An implication of power to the trustee becomes particularly necessary and appropriate where the testator has made no pretense at specifying in detail the trustee's authority. The testator has, in effect, relied on the law to imply all that is necessary to accomplish his purpose. In such circumstances the law should go as far as it properly can to implement the

testator's intention. Leaving an estate, as this testator did, largely made up of common stocks, whose value was subject to fluctuation, it would be unrealistic to say that he intended to freeze investments of that nature beyond usual change or revision. For if this were so, a prudent trustee would be left in a position unfavorable for protecting the trust estate, to say nothing of benefitting it.

The following quotation from Scott on Trusts, Vol. 11, at page 1370 is much in point: "In the earlier days, particularly in England, trustees were not usually intended to exercise as wide powers of management and control as those which are usually intended to be conferred upon trustees today. There is a general tendency to enlarge the scope of the powers of trustees * * *. Where the trust instrument does not clearly designate the extent of the trustee's power, however, the tendency above referred to must be borne in mind. The Courts are more ready today than they used to be to find an intention to confer broad powers on the trustee." And see Bogert, Trusts and Trustees, Vol. 3, p. 557.

In the absence of specific directions it is to be assumed that neither the testator nor any one else of ordinary prudence is so naïve as to invest almost his entire capital in common stocks under an investment program which was not to be adjusted to changing circumstances. General market conditions might dictate that a prudent trustee "get out of the market" entirely and place the assets in a more stable medium even though in doing so the trustee might have to yield up in taxes a part of the realized profits. Even in a jurisdiction like Vermont in which the so-called "liberal rule" is followed as to trust investments, common stocks have never been looked upon with such favor that the courts were prone to hold that a trustee was committed to this form of investment by the trust instrument.

We conclude that the trustee might not be acting beyond the power impliedly conferred upon it in this case, under some circumstances, so far as any sale in connection with the investment or conservation of the trust assets is concerned. In so holding, we in no way pass upon the question of whether there was a proper exercise of such power. But the

answer of the trustee filed in probate court seeks to justify its sale on that ground and also on the ground that the sale was made in preparation for final distribution. If, in fact, it should be determined that the trustee's sale was made in preparation for final distribution, then what we have said to this point would not be controlling. The implied right to sell in connection with the investment of trust assets would not then be relevant so as to affect the possible right of the beneficiaries to have distribution in kind. Certainly there is no right of sale to be implied in connection with every distribution of trust property. The question of whether a trustee has a duty in that regard to transfer the property in kind or to sell it and pay over the proceeds depends on a number of factors. They are as Scott on Trusts says in Vol. III at page 2531: * * * "whether the trust instrument makes provision, expressly or by implication, as to the mode of distribution; whether a single person is entitled to the estate, and, if so, whether or not he is sui juris, or whether there are several beneficiaries, and, if so, whether they are all sui juris and whether they all agree upon the mode of distribution; whether the trust estate consists of or includes land, fungible personal property, or nonfungible personal property; whether a division in kind is practicable; whether the trust is terminable in part or wholly terminable; whether the distributees, or some of them, take beneficially or in trust."

On what little there is before us, we do not feel that we are in a position to say as a matter of law whether distribution in cash or in kind would have been the proper procedure. The remaindermen were not children of the testator, but a brother and a sister. One has since died. The issue of whether there was an agreement by the beneficiaries as to the mode of distribution has not yet been determined. We pursue this matter no further, as we think that the question of fungibility of the property and the proper method of distribution of the trust estate under all the circumstances would be for the probate court provided the case so resolves itself below that these questions are reached. Scott on Trusts, Vol. III, p. 2533.

We have next to consider what effect the failure of the trustee to get a license to sell from the probate court had upon its power to sell.

V. S. 47, §3127 provides as follows:

"*License; sale and investment of estate.* On application of the trustee or a person interested in the trust estate, the probate court may authorize or require the trustee to sell all or a part of the real estate, stock or other personal estate belonging to the trust estate, when it appears to the court to be beneficial to the trust estate and to the parties interested therein, or necessary or desirable in order to carry out the terms of the trust and with moneys in the hands of the trustee, invest the proceeds of such sale in real estate or in such other manner as the court judges most beneficial to those interested in such trust estate. Such court may make such further order or decree for the managing, investing or disposing of the trust fund as the case requires, consistent with the trust. In case of an absent person, the probate court may make such order for the support of the family as it deems necessary."

A few preliminary observations regarding the foregoing statute may be of some help. It is to be found substantially in its present form as early as 1839 in Chapter 55, §11 of the Revised Statutes of 1839.

Certain additional provisions now contained in the next section, V. S. 47, §3128, applying where the sale consists of real estate, are of a much later origin. The word "stock" in the statute is hardly to be taken as meaning corporate stock; rather it refers, evidently, to such property as stock in trade and live-stock. We speak of this only for the purpose of guarding against any false emphasis being ascribed to the word. The expression, "other personal estate" is, of course, inclusive enough to cover corporate stock.

The words of the statute are clearly permissive in character. Compare *Joy* v. *Swanton Savings Bank*, 111 Vt 106, 111, 10 A2d 216. The effect of V. S. 47, §3127 is simply this. It enables a trustee, contemplating a sale of personal property, to apply to the probate court and get a determination by that court that such sale is beneficial to the trust estate, that is, necessary or desirable. By so applying and obtaining such a determination by the court, the trustee avoids the possibility that its act in that regard will be later called in

question by those interested in the trust estate. The beneficiaries are not left in a position to complain that the trustee has failed to exercise the care, skill and prudence required by the law of a trustee. The fact that a trustee fails to get a license to sell personal property in no way lessens his power to make such a sale. It merely leaves open the question of whether the power has been properly exercised. So, in the appellants' contention that "where the will is silent, a trustee, upon termination of the life estate has no power to sell trust assets unless he has either [1] a license or order of approval of the probate court or [2] the consent of the beneficiaries," we have disposed of part "[1]" of the contention. As to "[2]" we need only point out that trustees do not derive their power from the beneficiaries. Consent of the beneficiaries is not one of the sources of the trustee's powers. "Broadly speaking, consent by a beneficiary cannot enlarge, nor can objection limit, the powers of a trustee." 90 CJS p. 220, and see cases cited. To be sure by consenting, a beneficiary in some circumstances may put himself in a position to be unable to question the powers of a trustee. This may become important in a later phase of this case when full hearing on the merits takes place.

What we have said disposes of all the questions properly before us. It follows from the foregoing that before the trustee's account can be properly allowed two questions will have to be considered by the court below. They are questions which the trustee has put in issue by its answer. First, Did the "exigencies of the situation" and "prudent management" dictate that the trustee sell the trust holdings when it did? The trustee may well have been faced with a problem which comes to every person investing in common stocks, namely, whether to take the profit, pay the tax and "get out of the market" or to stay on and accept such eventualities as may be forthcoming. A trustee is not necessarily to be condemned because out of an abundance of caution, it has decided to do the former, even though a part of the handsome profit realized must be yielded up in taxes. It can hardly be denied that the trustee's first duty is the preservation of the estate, not the

profit of the beneficiaries. *Rogers* v. *English*, 130 Conn 332, 33 A2d 540, 147 ALR 812.

In passing on the trustee's action, due regard should be had for all the factors and circumstances involved, including "the impact of federal taxes", and it should then be determined whether the exigencies of the situation and prudent management justified the trustee's action in selling as it did. Assuming that no sale was necessary or desirable on that account, then it was for the court to say whether the beneficiaries had a right to have distribution of the assets in kind, having in mind all the pertinent factors which have previously been enumerated, provided, of course, the beneficiaries had not consented or acquiesced to distribution in cash. The trustee's answer raises an issue on this point and it is for the court below to determine whether the beneficiaries elected to take their several shares in cash or in kind or whether when presented with the opportunity to elect, they made no choice and acceded to the trustee's suggestion that there be liquidation to cash. Of course, if the latter were the case the beneficiaries have no standing to complain on this account.

In general, where the testator, either expressly or by implication, has provided for distribution in kind it should be made that way. Apart from any express or implied direction, the beneficiaries may still have a right to have distribution in kind where they have elected to have it that way provided the assets are fungible, that is to say, in such form as to make a division in kind practicable. In case the beneficiaries are not all of one mind, this, in itself, may make distribution in kind impracticable.

*For the reasons stated, the decree pro forma allowing the trustee's account is reversed with directions that further proceedings be had by the probate court in accordance with the views expressed herein.*