## William E. Mikell and Sara U. Mikell, et al. v. Town of Williston, et al., and Town of Franklin, et al.

[285 A.2d 713]

No. 87-70

Present: Shangraw, Barney, Smith and Keyser, JJ., and Larrow, Supr. J.

Opinion Filed December 9, 1971

*William E. Mikell,* Burlington, and *George T. Costes,* St. Albans, for Plaintiff.

*Black & Plante,* White River Junction, and *Webber & Costello,* Rutland, for the Trustees of the Diocese of Vermont.

*Yandell & Page,* Burlington, for the Towns of Williston and Franklin and their respective officers.

*James M. Jeffords,* Attorney General, and *William T. Keefe,* Assistant Attorney General, for the State.

**Barney, J.** This litigation has two aspects, both dealing with that unusual Vermont institution, the so-called "leaselands". At issue is the constitutionality of assigning rental income from such lands to concededly religious purposes.

Professor Walter T. Bogart's definitive study of this form of land holding, *"The Vermont Lease Lands"*, published in 1950 by the Vermont Historical Society, is an invaluable background source for a full understanding of this litigation. It relieves this Court from the necessity of a long narrative of early history. However, some exposition is essential to make the issues of the litigation meaningful.

Many of the towns in Vermont established before the Revolution were chartered by Benning Wentworth, Royal Governor of the Province of New Hampshire. Most of these town charters, besides granting land to the proprietors, made certain reservations, usually amounting to one share of land, for the Church of England, for the Society for the Propagation of the Gospel in Foreign Parts, for the first settled minister, and for the benefit of a school in the town. After the Revolution a similar pattern prevailed in grants by the government of Vermont. These later charters usually had five shares, one for the use of a seminary or college, one for the use of a county grammar school, one for the first settled minister, one for the support of the ministry forever and one for the support of a school or schools within the town.

The two controversies involved here relate to different kinds of charters. Williston has been called upon to defend under its Wentworth charter, and the grant to the Society for the Propagation of the Gospel in Foreign Parts is under attack. The lease-rent from that lot is paid to the Trustees of the Episcopal Diocese of Vermont, also defendants here, as successors to the Society for the Propagation of the Gospel in Foreign Parts, an English corporation chartered by William III, which transferred its rights to the Trustees in 1927.

In Franklin, it is the lot for the support of the ministry which is involved, and the payment, under 24 V.S.A. § 2404, of that rental income to the various religious denominations in Franklin which is questioned.

The plaintiffs condemn the distribution of these rents, in both situations, as diversions from public funds that compel them to support and maintain religious societies against their will, contrary to the provisions of Chapter I, Article 3 of the Vermont Constitution. Furthermore, they claim such subsidization is contrary to the First Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment.

The issues were brought to the court of chancery in a bill seeking relief by way of declaratory judgment. The facts were stipulated, and the chancellor made findings accordingly. At the close of the case the chancellor then, by judgment order, denied relief and dismissed the action. This appeal followed.

The original petition also raised an issue concerning the constitutionality of the tax exempt status of these lands, as held under lease. Since then, the legislature, by 32 V.S.A. § 3610, has provided for the taxing of such holdings to the occupants, and the issue is no longer before us, since the plaintiffs do not now press it. See *Dodge* v. *Worcester*, 129 Vt. 441, 282 A.2d 799 (1971).

The lot held in trust for the support of the ministry, sometimes referred to as the "Gospel lot", is held for the benefit of those present and future inhabitants who join in social worship. Title is vested in the municipality concerned, in this case, the town of Franklin. *Jones* v. *Vt. Asbestos Corp.*, 108 Vt. 79, 89–90, 182 A. 291 (1936). In that case, reference is made to the possible impropriety of a municipal corporation holding as a trustee for religious purposes, but, as a doctrine,

it is rejected as contrary to our law from earliest times. As we have seen, the manner of executing that trust is a matter of statute. 24 V.S.A. § 2404.

■■ But whatever Vermont law may have permitted, it is now subject to the limitations of the First Amendment, through the operation of the Fourteenth Amendment. *Everson* v. *Board of Education,* 330 U.S. 1, 8, 91 L.Ed. 711, 719 (1947). Public subsidy of the dissemination of religious doctrine is unconstitutional. *Illinois* v. *Board of Education,* 333 U.S. 203, 210–12, 92 L.Ed. 649, 658–59 (1948). Since title to these lands is held by the municipality, the income represents public money, and, as a direct financial subsidy to religious activity, is improper.

It has been many times stated that the purpose of such a subsidy springs from a general intent to benefit the community. *Jones* v. *Vt. Asbestos Corp., supra,* 108 Vt. at 90. This purpose can hereafter be properly fulfilled, without constitutional objection, by assigning such income to general community purposes, as is money raised on the grand list.

The plaintiffs find the same unconstitutional situation with respect to the S.P.G.[1] land in the town of Williston. This Court finds a significant difference.

In the first place, the fee, or legal title, is in the Trustees of the Episcopal Diocese. It is not, and never has been, in the State of Vermont or any municipality. *Pawlet* v. *Clark,* 13 U.S. (9 Cranch) 292, 325 (1815). The Supreme Court of the United States, in the face of a divestiture attempt by the Vermont legislature, long ago held that the state could not abrogate these grants. *Society for the Propagation of the Gospel in Foreign Parts* v. *New Haven,* 21 U.S. (8 Wheaton) 464, 487 (1823).

The S.P.G. lands do benefit from that peculiar authorization to be subject to so-called "durable" leases that may run in perpetuity, and have been generally understood to be under the proscription of state law that formerly prohibited the transfer of such trust lands away in fee. But see 24 V.S.A. § 2406. On analysis, these circumstances are all part of the con-

---

[1] This has become the accepted abbreviation of "Society for the Propagation of the Gospel in Foreign Parts".

cept that the lands are subject to a trust designed to serve future generations of beneficiaries. It is part of the obligation of the trustee to preserve the land ownership, the material asset of the trust, for this purpose. *Lampson* v. *New Haven*, 2 Vt. 14, 16 (1829); *Caledonia County Grammar School* v. *Kent*, 86 Vt. 151, 158, 84 A. 26 (1912). The Court drew this conclusion from an examination of the nature and purposes of the trust grants. Thus, the inalienability of the fee derived, not from any condition upon, or reservation of, any part of that fee, but simply from the recognized duty of a trustee to preserve the corpus of the trust. See *In re Wellman Estate*, 119 Vt. 426, 431, 127 A.2d 279 (1956); *Destitute* v. *Putnam Hospital*, 125 Vt. 289, 300, 215 A.2d 134 (1965).

In 24 V.S.A. § 2406 the legislature undertook to remove any absolute prohibition against conveying these charter grant trust lands in fee. Two conditions were attached: one, that the holder of leasehold rights was to have preference as a grantee, and, second, that the funds received were to be kept as endowment funds, with only the income going for trust purposes. In *Jones* v. *Vt. Asbestos Corp., supra*, 108 Vt. at 102, it was held, in approving an earlier statute (at that time limited to the educational grants), that the enactment was not a destruction or a modification of the purposes and objectives of the trust, but merely removed a restriction from the grant. It is significant that the legislation was viewed as dealing with the requirements of the trust, and not as any enlargement of the title now disposable by the trustees.

The restraint on alienation and the associated device of the "durable lease" came into being for the protection of trust purposes, not as reservations of title in the sovereign. The remote and wild nature of the lands granted, the desire to support the Church of England and the unlikelihood of any on-the-scene protection for lands set aside for this charitable use, all joined to inspire resort to this restrictive legal doctrine to insure the preservation and improvement of the trust lands. *University of Vermont* v. *Ward*, 104 Vt. 239, 262, 158 A. 773 (1932). The same considerations applied to glebe and school lots granted by the State of Vermont, and thereafter they were generally treated alike.

But they are different. In the case of the S.P.G. grant, the fee is not in public hands, but held by a charitable corporation. Therefore, the rental income from such lands is not derived from any public source. It follows that the application of that income to any religious purpose cannot be viewed as any kind of unconstitutional allocation of public funds. Insofar as the chancellor's ruling supports this view with respect to the suit against the town of Williston and the Trustees of the Episcopal Diocese of Vermont, it must be sustained.

*The entry of dismissal below is vacated and, with respect to the Town of Franklin, it is ordered, adjudged and decreed that all rental and leasehold income derived from the lot originally granted for the support of the ministry shall henceforth become part of the general revenue of the Town and shall not be distributed to any religious organization; with respect to the Town of Williston, it is ordered, adjudged and decreed that the Trustees of the Diocese of Vermont, as owners in fee, in trust nevertheless, of the lot granted to the Society for the Propagation of the Gospel in Foreign Parts, are entitled to the income deriving from the leasing thereof.*

The Chief Justice took no part in the hearing or disposition of this case.